UNITED STATES of America,
Appellee,

v.

William F. FORTUNATO, Defendant-
Appellant.

No. 321, Docket 31836.

United States Court of Appeals
Second Circuit.

Argued April 22, 1968.

Decided Oct. 18, 1968.

Certiorari Denied March 24, 1969.

See 89 S.Ct. 1205.

Eugene Feldman, New York City
(Joseph Rosenzweig, Jonathan Goldberg,
New York City, on the brief), for de-
fendant-appellant.

John Leone, Asst. U. S. Atty. (Joseph
P. Hoey, U. S. Atty. for Eastern Dist. of
New York, Ronald Gene Wohl, Asst. U. S.
Atty., on the brief), for appellee.

Before HAYS, ANDERSON and
FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

William F. Fortunato appeals from a
conviction in the United States District

Court for the Eastern District of New York, before Chief Judge Joseph C. Zavatt and a jury, of six counts of wilful misapplication of bank funds, in violation of 18 U.S.C. § 656.[1] Appellant is a former assistant vice president of the Melville Branch of the Long Island Trust Company, whose deposits are insured by the Federal Deposit Insurance Corporation. Fortunato was sentenced to imprisonment for concurrent terms of three years on each count. For reasons stated below, we affirm.

The following is what the trier of facts could have found, viewing the evidence in the light most favorable to the Government. As assistant vice president in charge of the branch, appellant had authority to grant unsecured loans of up to $5,000. Moneys loaned could be advanced in only two authorized ways, either by depositing the proceeds to an account in the borrower's name or by a Secretary's check, an official check of the Long Island Trust Company which requires two authorized signatures for negotiation. It was an official policy of the bank that the borrower himself fill out an application for a loan. Between November 1961 and March 1963, appellant engaged in a series of unusual transactions. Fortunato signed fictitious names to five loan applications and on each supplied fictitious biographical data and alleged reasons why these persons wanted to borrow the amounts requested. The proceeds of the loans were advanced either in the form of money orders in blank, negotiated by Fortunato, or by the opening of accounts in the fictitious names, which Fortunato could draw upon from time to time. An additional loan was to a real person; in this case, Fortunato simply raised the amount of the application without the knowledge or authority of the applicant, Enoch Kalstad, from $100 to $3,500, approved the application as altered, and applied the remaining $3,400 to his own use.

Although the trial lasted almost three weeks, by the time the case was submitted to the jury the issues were not complex. There was no dispute that appellant was an officer of a type of institution covered by the statute. Moreover, the judge confined the jury to the Government's charge of wilful misapplication of funds in the bank's care or custody, thus removing from the case other possible theories of violation of the statute, which had been stated in the indictment.[2] The key issue that counsel put to the jury in their summations was whether the Government had proved Fortunato's intent to injure or defraud the bank, which the judge correctly charged was a basic element of the crime. United States v. Mullins, 355 F.2d 883, 886 (7th Cir.), cert. denied, 384 U.S. 942, 86 S.Ct. 1465, 16 L.Ed.2d 540 (1966); Giragosian v. United States, 349 F.2d 166, 168 (1st Cir. 1965). Appellant's counsel argued that Fortunato always intended the loans to be repaid and emphasized that they, in fact, were; he also called attention to the witnesses who testified to Fortunato's good reputation in the community. The Government stressed appellant's use of fictitious names and false information on the loan

---

1. A seventh count, charging appellant and four members of his family with conspiring to violate 18 U.S.C. § 656, was dismissed by the court before the case went to the jury.

2. 18 U.S.C. § 656 provides:
 Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank * * * embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both * * *.
 The indictment, in addition to charging that defendant had "misapplied" certain sums, included the other three statutory possibilities; i. e., defendant had "embezzled, abstracted, purloined" the moneys.

applications, the improper procedures and secrecy used to advance the money, and the possession by appellant of sums loaned in form to others. It was not necessary for the Government to prove that the bank actually suffered any loss. Golden v. United States, 318 F.2d 357 (1st Cir. 1963); Benchwick v. United States, 297 F.2d 330, 334 (9th Cir. 1961). And by its verdict, the jury determined the factual issues, provided that the evidence was sufficient to justify submission of the case to it.

▊ Among the grounds urged for reversal, however, are two dealing with the sufficiency of the evidence. Fortunato contends that counts one through five, involving four loans in the fictitious name Emory J. Hill and one in the fictitious name Anselmo Fartulapo, should have been dismissed at the close of the Government's case for failure to show that appellant knew that either of these persons was fictitious. Appellant stipulated, however, in the course of the Government's case, that Hill and Fartulapo were fictitious persons, that he filled out the applications containing false information, that the address used on the applications was that of his brother, Armand Fortunato, and that any mail from the bank was sent to that address. The Government further showed that the proceeds of one of the loans was advanced by a money order payable to appellant. There was sufficient evidence on these counts to go to the jury.

Appellant also argues that the evidence on the sixth count (Enoch Kalstad) was insufficient.[3] While the Government offered no direct proof that Fortunato raised the amount of the Kalstad loan application, it showed that Fortunato made out the application contrary to bank policy, that a Secretary's check for $100 was drawn to Kalstad and the remaining $3,400 eventually disbursed by money orders payable to Fortunato or his nominee, that appellant requested the loan coupon book to be returned to the branch and not mailed to Kalstad directly, and that Fortunato personally assured the president of the bank that the Kalstad loan would be repaid. The Government further showed that a money order (an unauthorized procedure) was difficult to key into a particular transaction. We conclude that the evidence was sufficient to make out a prima facie case without taking into account Fortunato's own testimony. The latter included significant admissions made under cross-examination; i. e., Fortunato mailed the final payment to the bank, after he had been dismissed, in an envelope bearing the language, "Please tell Mr. Fortunate * * * paid in full," thus deliberately misspelling his own name to conceal the fact that he was making the payment.

▊ Appellant also contends that the indictment was fatally vague and should have been dismissed by the trial court. He argues that "wilfully misapplied" is a term of no settled meaning and that the grand jury, therefore, was required to set out in the indictment the unlawful means employed by appellant to accomplish each criminal act and why each transaction involved an abuse of appellant's authority. However, the statutory concept of misapplication is not a vague word of such uncertain application as to require dismissal of the indictment. See United States v. Hickey, 360 F.2d 127, 144–145 (7th Cir. 1966). See also Hargreaves v. United States, 75 F.2d 68 (9th Cir.), cert. denied, 295 U.S. 759, 55 S.Ct. 920, 79 L.Ed. 1701 (1935); Robinson v. United States, 30 F.2d 25 (6th Cir. 1929). There can be no claim that the jury here was left to speculate about the meaning of the term. The judge correctly charged that misapplication occurs when an officer of a bank knowingly lends money to a fictitious borrower or causes the loan to be made to his own benefit, concealing his interest from the bank. Each of the six counts accused Fortunato of the crime of wilful misapplication of bank funds and specified the date of the offense, the amount involved, and the name of the

3. Kalstad died in January 1966, before the trial commenced.

bank. The indictment was sufficiently particular on its face to preclude any chance that appellant could be twice charged for the same crimes. In a prosecution under 18 U.S.C. § 656, where the offense is set out in the language of the statute, the omission of the means by which the offense was committed does not render the indictment insufficient. Cf. United States v. Straitiff, 14 F.R.D. 337 (W.D.Pa.1953). Appellant demanded and received a bill of particulars from the Government which specified the five loan transactions executed by Fortunato in the fictitious names of Emory J. Hill and Anselmo Fartulapo and which also alleged that appellant had raised the Kalstad application from $100 to $3,500 and diverted the remaining $3,400 to his own use. Under the circumstances, Fortunato can hardly complain now that he was not sufficiently apprised of the case against him to enable him to frame his defense.

Appellant also contends that he was denied a fair trial because of the prejudice of the trial judge. While it is true that the judge participated actively at times in the questioning of witnesses, many of his questions appear to have been justified by the complex and technical nature of much of the testimony regarding bank procedures and forms. Much of the criticism of defendant's counsel which appellant calls to our attention was made out of the presence or the hearing of the jury. In any event, we have reviewed the record and conclude that Fortunato was not denied a fair trial before an impartial judge and jury.

■■ Finally, appellant argues that the subpoena requiring him to appear before the grand jury while being investigated vitiated the indictment because his counsel notified the United States Attorney that appellant's privilege against self-incrimination would be asserted and that he would not testify. From this, appellant concludes that "the only purpose" for requiring his appearance was to prejudice the grand jury against him, an improper intention which he urges must be punished by the sanction of dismissal. As this statement of the argument makes clear, there is no question here of failure to advise appellant of his constitutional rights under the fifth amendment. Cf. United States v. Scully, 225 F.2d 113 (2d Cir.), cert. denied, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788 (1955). Moreover, the rule of this circuit is that the fifth amendment generally does not prohibit potential defendants from being summoned before a grand jury. See, e. g., United States v. Capaldo, 402 F.2d 821 (2d Cir. Oct. 7, 1968). Appellant's only support for the proposition that he was called to testify solely for the "prejudicial effect" of his pleading the fifth amendment is that his attorney had advised the United States Attorney that appellant would remain mute and the attorney's conclusory statement in the affidavit submitted to the district court that appellant and other members of his family "were indicted, not based upon any evidence of wrong doing, but in retaliation for their refusal to testify." However, it is clear from the record that there was other evidence of wrongdoing before the grand jury and that appellant's sister-in-law, Kathleen Fortunato, also refused to testify before the grand jury, but was not indicted. Whatever might be called for if there were adequate proof of the unworthy prosecutorial motive alleged by appellant, see United States v. Winter, 348 F.2d 204, 211 (2d Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965); cf. United States v. Scully, supra, the refusal of the district court to dismiss the indictment was not error.

The judgment of conviction is affirmed.