UNITED STATES of America,
Plaintiff-Appellee,

v.

E. Ross KING, Defendant-Appellant.

No. 73-1119.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Aug. 13, 1973.

Decided Oct. 1, 1973.

Rehearing Denied Oct. 26, 1973.

Paul D. Cooper, Asst. U. S. Atty. (James L. Treece, U. S. Atty., on the brief), for plaintiff-appellee.

Jack B. Speight, Cheyenne, Wyo. (Hanes, Carmichael, Johnson, Gage & Speight, Cheyenne, Wyo., on the brief), for defendant-appellant.

Before LEWIS, Chief Judge, and BARNES * and McWILLIAMS, Circuit Judges.

* Senior Circuit Judge of the Ninth Circuit, sitting by designation.

McWILLIAMS, Circuit Judge.

E. Ross King, hereinafter referred to as the defendant, was adjudged guilty by a jury on both counts of a two-count indictment based on 18 U.S.C. §§ 2 and 656. The first count charged him with the misapplication of bank funds as a bank director. The second count, based on a separate transaction, charged him with aiding and abetting another who was a bank director in the misapplication of bank funds. The defendant now appeals and the nature of the issues suggests that we examine more closely the charges in the indictment.

In count 1, the defendant and his brother, Paul W. King, were jointly charged with unlawfully misapplying funds of the Kiowa State Bank in violation of 18 U.S.C. §§ 2 and 656. More specifically, in count 1 it was alleged that as of March 2, 1970, the defendant and Paul King were directors of the Kiowa State Bank, a federally insured bank, and that on that date they unlawfully misapplied monies of the bank by causing a money order to be disbursed in the amount of $50,000 made payable to Applecross Farms and Maddison Farms, which sum was ultimately converted to their personal use.

In count 2, it was alleged that on or about June 14, 1971, Paul King was a director of the Kiowa State Bank and that on or about that date Paul King unlawfully misapplied monies belonging to the bank by causing to be disbursed to one A. Paul Williams the sum of $25,000, $19,516 of which was ultimately converted to the personal use of Paul King and the defendant. The only charge, as such, in count 2 involving the defendant is that he aided and abetted his brother, Paul King, a bank director, in the disbursement of bank funds to the aforesaid A. Paul Williams.

As indicated, the defendant and his brother, Paul King, were jointly indicted. However, before trial Paul King pleaded guilty to count 1 of the indictment, and other charges then pending against him were dismissed. The de-fendant proceeded to trial on both counts in the indictment, and he was convicted by a jury on both counts. The grounds for reversal are grouped as follows: (1) The evidence is legally insufficient to sustain a conviction on count 2; (2) plain error was committed by the trial court in permitting the defendant's former attorney to testify against him as a Government witness; and (3) the defendant was denied his Sixth Amendment right to the assistance of counsel because of trial counsel's gross incompetence. As concerns the last mentioned matter, needless to say, present counsel for the defendant was not trial counsel.

Although the sufficiency of the evidence argument runs in the main to count 2, we shall first briefly review the Government's evidence as it relates to count 1, in order that the entire matter may be viewed in context. As of March 2, 1970, Paul King was a director of the Kiowa State Bank, located in Kiowa, Colorado, and served as its president. The defendant as of that same date was a director of the bank, but not an officer. Without going into unnecessary detail, on March 2, 1970, the defendant, and his brother, caused a loan in the amount of $50,000 to be made by the bank to Applecross Farms, Inc., on the latter's promissory note. The president of Applecross Farms, Inc., endorsed the check in question in favor of a company controlled by the defendant and the defendant thereafter then drew two checks on his company's account, one check being in favor of his brother, Paul King, in the sum of approximately $25,000, and a second check in the same amount being made payable to himself. Paul King and the defendant then deposited the proceeds of these two checks in their respective personal accounts in the Kiowa State Bank.

As concerns the charge contained in the second count of the indictment, it would appear that as of the date of the transaction upon which the second count is predicated, namely, June 14, 1971, the defendant had resigned as a bank director and was no longer serving in such

capacity. However, his brother, Paul King, was still serving as a bank director and president. The fact that the defendant was no longer serving as a director of the bank is apparently the reason that insofar as the second count is concerned the defendant was only charged with aiding and abetting the director, namely, his brother, Paul King, in the misapplication of bank funds.

In any event, as concerns count 2, the Government's evidence showed that the defendant and his brother formed an entity known as the Kiowa Real Estate Investment Trust and hired A. Paul Williams as a salesman. The three of them, i. e., Williams, the defendant, and his brother, arranged for a loan to Williams from the bank in the sum of $25,000, with Williams giving the bank his promissory note in exchange therefor. In this regard, Williams testified that though he signed the note, he understood that he would not be called on to pay the same, and that payment would ultimately be made by the defendant or his brother. Of the sum loaned, $5,000 was used to pay off a preexisting overdue note of Williams to the bank, and Williams endorsed the balance of the loan, approximately $20,000, over to the defendant. This sum was then traced to the defendant's personal account in a Denver bank.

Williams' testimony was to the effect that at the time of this transaction, the Kiowa Real Estate Investment Trust was experiencing financial troubles, and that the proceeds of this loan were given the defendant to recoup him for advances previously made by him to the trust. While the evidence on this point was not fully developed, the record is such as to permit the inference that the real purpose of this particular loan was to improve the overall financial standing of the Kiowa Real Estate Investment Trust, which, as indicated, was jointly owned by the defendant and his brother.

Although, as will be brought out later, there is some challenge to the sufficiency of the evidence to sustain a conviction under the first count of the indictment, defendant's insufficiency of the evidence argument centers mainly on the second count. In this regard, counsel points out that as of June 14, 1971, the date of the transaction upon which the second count is predicated, the defendant was no longer director of the bank and that accordingly the only way he could violate 18 U.S.C. §§ 2 and 656 would be by aiding and abetting another, namely, his brother, who was a director, in the wilful misapplication of bank funds. Counsel then goes on to argue that before the defendant can be found guilty as an aider and abettor, the Government must show that there was a principal who was a bank director and who, acting as such, misapplied bank monies. In this connection, then, it is asserted that there is insufficient evidence to show that defendant's brother, Paul King, violated the provisions of 18 U.S.C. § 656 and that such being the case the defendant cannot be guilty of aiding and abetting his brother in any violation. We disagree with this analysis of the record.

The phrase "wilfully misapplies" as used in 18 U.S.C. § 656 has been the subject of considerable judicial discussion. It has been held that the words "wilfully misapplies" have no settled technical meaning, such as "embezzle," for example, and that "misapply" was intended to include acts not covered by the words "embezzle" or "abstract" as such are used in the statute. Batchelor v. United States, 156 U.S. 426, 15 S.Ct. 446, 39 L.Ed. 478 (1895). However, "misapplication" has been distinguished from "maladministration." United States v. Meyer, 266 F.2d 747 (5th Cir. 1959), cert. denied, 361 U.S. 875, 80 S. Ct. 138, 4 L.Ed.2d 113 (1959). At the same time, it has been held that in a prosecution against a bank president for wilful misapplication of bank funds and against a codefendant for aiding and abetting, evidence that the defendant bank president, though professing to secure approval of a loan by the bank, had in fact made the loan to his codefendant

without valid consent of the board for the purpose of assisting the codefendant and an already failing trust company, and indirectly to aid a company in which defendant and his codefendant were interested, which loan subjected the bank to an "indefensible risk," was sufficient to sustain a conviction against the defendant bank president as a principal and against his codefendant as aider and abettor. Mulloney v. United States, 79 F.2d 566 (1st Cir. 1935), cert. denied, 296 U.S. 658, 56 S.Ct. 383, 80 L.Ed. 468 (1935). Similarly, it has been held that a "misapplication" by a bank director occurs when money is knowingly lent to a fictitious borrower or the director causes a loan to be made for his own interest, concealing his interest from the bank. United States v. Fortunato, 402 F.2d 79 (2d Cir. 1968), cert. denied, 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969).

■ As concerns the facts and circumstances surrounding the loan to Williams in return for his promissory note, both defendant and his brother, Paul King, were present when the loan was consummated. Immediately prior to the actual loan, there had been discussion between defendant, his brother, and Williams concerning the financial plight of the Kiowa Real Estate Investment Trust, in which all three were interested. Williams testified that as of the date of the loan he had another overdue loan with the bank. It was in this setting that the bank loaned Williams $25,000 on his unsecured promissory note. And though Williams signed the note, it was understood that the defendant or his brother would actually repay the loan. As indicated, part of the proceeds went to pay off Williams' overdue note, and the balance Williams endorsed over to the defendant in his brother's presence, to reimburse the former for advances previously made the Kiowa Real Estate Investment Trust. Further, there was evidence that no record was ever made of this loan on the bank's Loan Registry. As above mentioned, though the monies given defendant by

Williams were deposited in the defendant's personal bank account, there was evidence to indicate that the real reason for the loan was to improve the financial standing of the Kiowa Real Estate Investment Trust, which was jointly owned by the defendant and his brother. Without further recitation of the Government's evidence, we conclude that under the authorities above cited there is ample evidence to show that under the circumstances Paul King "wilfully misapplied" bank monies by causing the aforesaid loan to be made to Williams, and that the defendant aided and abetted him in the transaction.

Our resolution of this phase of the controversy squares with our recent pronouncement in United States v. Cooper, 464 F.2d 648 (10th Cir. 1972). In that case, we held that an aider and abettor may violate 18 U.S.C. § 656 by assisting a bank official in committing the misapplication and that evidence that the misapplication was for the benefit of the bank officer or the aider and abettor would sustain a conviction against both the bank director and the aider and abettor. As above noted, proceeds from the loan to Williams were placed in the defendant's personal account, and indirectly inured to the benefit of the Kiowa Real Estate Investment Trust, in which both the defendant and his brother had an interest. In sum, then, the evidence is sufficient to sustain defendant's conviction under count 2.

■ It is next urged as grounds for reversal that plain error was committed by the trial court in permitting the defendant's former attorney to testify as a Government witness. No objection was made upon trial when the attorney was called by the Government and we do not regard the matter as one involving plain error. Rather, the record indicates to us that the failure of trial counsel to interpose any objection based on an alleged attorney-client privilege when the defendant's erstwhile attorney was called as a Government witness was intentional and a part of trial strategy, wherein trial counsel hoped to

elicit favorable testimony upon cross-examination which would more than offset any damaging testimony given by the witness on direct examination. Having thus waived any privilege, the defendant cannot at this late date seek to invoke it. Young v. Taylor, 466 F.2d 1329 (10th Cir. 1972).

Elaborating a bit more on this particular phase of the controversy, it is doubtful that the bulk of the testimony from defendant's erstwhile attorney was in fact privileged. In the main, the witness testified as to the two corporations which he incorporated at the behest of the defendant and his brother. And then, on cross-examination, he was permitted, over objection, to explain why the defendant and his brother chose to deal in the contemplated purchase of land and cattle in Kiowa County through corporate entities, rather than openly in their individual capacities. The explanation thus offered was indeed most plausible, but the jury apparently remained unconvinced. Under all these circumstances, we too remain unconvinced that plain error was committed.

■ As an offshoot of the foregoing argument, present counsel claims that because of trial counsel's gross incompetence the defendant was denied his Sixth Amendment right to the effective assistance of counsel. Such is not our view of the record. The fact that the defendant was convicted of course does not prove that he was denied his right to counsel. The record does not suggest to us any bad faith, sham, mere pretense, or want of opportunity for conference and preparation, and in such circumstance we find no denial to the defendant of his constitutional right to counsel. See United States v. Davis, 436 F.2d 679 (10th Cir. 1971).

■■ As alluded to above, the defendant makes minor complaint concerning the sufficiency of the evidence as to count 1. In this regard, counsel concedes that when the defendant took the stand and testified in his own behalf, he supplied any deficiency in the Government's case as to whether the defendant was in fact a bank director on March 2, 1970, the date of the transaction upon which the first count was predicated. However, he asks us to overrule our prior decision to the effect that where a defendant offers evidence after his motion for acquittal is denied, the question of the sufficiency of the evidence to sustain an ensuing conviction is thereafter to be determined by an examination of the entire record. This we decline to do. See United States v. Bedwell, 456 F.2d 448 (10th Cir. 1972). In our view, the Government did establish in its case in chief at least prima facie, that the defendant was a director of the Kiowa State Bank on March 2, 1970, a fact which defendant then admitted upon cross-examination. The evidence to sustain defendant's conviction on count 1 is amply sufficient.

Judgment affirmed.