**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Robert A. MANN and Bank of the Southwest, National Association, Defendants-Appellees.**

No. 74–2983.

United States Court of Appeals, Fifth Circuit.

Aug. 7, 1975.

Rehearing Denied Sept. 25, 1975.

---

Anthony J. P. Farris, U. S. Atty., Houston, Tex., Hugh P. Mabe, III, Atty., Dept. of Justice, Washington, D. C., Henry J. Novak, Jr., James R. Gough, Asst. U. S. Attys., Houston, Tex., Thomas J. McTiernan, Atty., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant.

William R. Eckhardt, Harold DeMoss, Jr., Houston, Tex., Seagal Wheatley, San Antonio, Tex., for R. A. Mann.

Morton L. Susman, Chester M. Fulton, Houston, Tex., for Bank of S. W., Nat'l Ass'n.

Before GIBSON,* THORNBERRY and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

This important criminal case involves the validity of an indictment charging misapplication of bank funds in connection with a multimillion dollar loan to a bank official at a preferential rate of interest, conditioned on his bank depositing an equal amount in a non-interest bearing account in the lending bank. The district judge dismissed the indictment for numerous reasons which he assigned. We disagree with those reasons and reverse.

I. The Facts

Robert A. Mann, who is Chairman of the Board of Directors and Chief Executive Officer of the First National Bank of Waco, Texas, and Bank of the Southwest, National Association of Houston, Texas, were jointly charged in a one-count indictment with a violation of 18 U.S.C. § 371 by conspiring during the period from December 1969 until February 1972 to knowingly and willfully misapply the monies and funds of the First National Bank of Waco, with intent to injure and defraud said bank by causing the funds to be converted to the use, benefit and advantage of the defendant, Mann, in violation of 18 U.S.C. § 656. Section 656 provides in pertinent part:

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, . . . embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

\* \* \* \* \* \*

In substance, the indictment charged that defendant Mann was to acquire controlling interest in the First National Bank of Waco for the purchase price of approximately $6,900,000, to be financed

---

* Of the Eighth Circuit, sitting by designation.

by a loan in this amount from defendant Bank of the Southwest. The Republic National Bank of Dallas was to participate in the loan to the extent of $2,900,000, leaving $4,000,000 as the amount of the loan to Mann from Bank of the Southwest. The loan was to be at the rate of interest of 3 per cent per annum, notwithstanding the fact that the prime rate of interest charged by Bank of the Southwest at the time was 8½ per cent. To compensate Bank of the Southwest for extending the loan to Mann at the preferential rate of interest of 3 per cent, Bank of the Southwest was to require Mann to place on deposit with Bank of the Southwest funds of the First National Bank of Waco in an amount commensurate with the principal amount of the loan, i. e., $4,000,000, in a non-interest bearing account until the principal was reduced or paid in full. Thus, according to the indictment, the monies and funds of the First National Bank of Waco were "converted to the use, benefit and advantage of the defendant, Robert A. Mann," and the preferential 3 per cent loan saved Mann approximately $350,000 per year in interest charges.

The indictment further alleged that defendants agreed that if the $4,000,000 principal was reduced but not paid in full, the amount of the non-interest bearing account to be kept by Mann in the Bank of the Southwest would be reduced by an amount commensurate with the reduction in principal. Accordingly, when Mann reduced the principal amount of the loan from $4,000,000 to $3,000,000, the compensating balance of $4,000,000 was also reduced to $3,000,000, and the rate of interest was increased from 3 per cent to 4 per cent, though Bank of Southwest's prime rate at that time was 6 per cent, thus saving Mann $110,000 per year in interest charges.

Finally, the indictment charged that to effect the object of the conspiracy, and in furtherance thereof, certain described overt acts were committed. Since the validity and sufficiency of the indictment are at issue, the full text of the indictment is reproduced in the margin.[1]

1. The Grand Jury charges:

Beginning on, or about, December 9, 1969, and continuing to on, or about, February 28, 1972, within the Houston Division of the Southern District of Texas, defendants, Robert A. Mann, Chairman of the Board of Directors and Chief Executive Officer of First National Bank of Waco, Waco, Texas, and Bank of the Southwest, National Association, Houston, Texas, and unindicted co-conspirator, Weyman W. Horadam, Senior Vice-President of Bank of the Southwest, National Association, Houston, Texas, and divers other persons whose names are to the Grand Jury unknown, combined, conspired, agreed and confederated to commit an offense against the laws of the United States, to-wit: to knowingly and willfully misapply monies and funds of the First National Bank of Waco, a national bank and a member bank, with intent to injure and defraud said bank by causing said monies and funds to be converted to the use, benefit and advantage of the defendant, Robert A. Mann, in violation of Title 18, United States Code, Section 656.

The object of the conspiracy was to be accomplished as follows:

The defendant, Robert A. Mann, was to acquire controlling interest in the stock of First National Bank of Waco for the purchase price of approximately $6,900,000.00.

To finance the purchase of the aforesaid stock, the defendant, Robert A. Mann, was to borrow $6,900,000.00 from the defendant, Bank of the Southwest.

Unindicted co-conspirator Weyman W. Horadam was to act as an officer and agent of defendant, Bank of the Southwest, and was to arrange for the defendant, Bank of the Southwest, to lend $6,900,000.00 to the defendant, Robert A. Mann.

The defendant, Bank of the Southwest, was to extend credit and fund the aforesaid $6,900,000.00 loan to the defendant, Robert A. Mann, at the rate of interest of three per cent (3%) per annum notwithstanding the fact that the prime rate of interest per annum charged by the defendant Bank of the Southwest, at such time was eight and one-half per cent (8½%).

The defendant, Bank of the Southwest, was to sell a participation of $2,900,000.00 of the loan to the defendant, Robert A. Mann, to Republic National Bank, Dallas, Texas, thereby rendering defendant, Bank of the Southwest's, extension of credit and funding of the aforesaid loan to the defendant, Robert A. Mann, $4,000,000.00.

To compensate the defendant, Bank of the Southwest, for extending and funding the aforesaid $4,000,000.00 loan to the defendant, Robert A. Mann, at the preferential rate

of interest of three per cent (3%) per annum, the defendant, Bank of the Southwest, was to require the defendant, Robert A. Mann, to place on deposit with defendant, Bank of the Southwest, an amount of money commensurate with the principal amount of the loan, to-wit: $4,000,000.00, which money was to be placed in a non-interest bearing account until such time as the said $4,000,000.00 principal was reduced or was paid in full.

The defendant, Robert A. Mann, was to cause $4,000,000.00 of monies and funds of the First National Bank of Waco to be placed on deposit in the aforesaid non-interest bearing account at the defendant, Bank of the Southwest, whereby the use, benefit and advantage of said monies and funds was converted from the First National Bank of Waco to the use, benefit and advantage of the defendant, Robert A. Mann.

By reason of the aforesaid $4,000,000.00 to be placed on deposit in a non-interest bearing account at the defendant, Bank of the Southwest, the defendant, Robert A. Mann, was to receive the preferential rate of interest on the aforesaid loan of three per cent (3%) per annum, thereby saving the defendant, Robert A. Mann, approximately $350,000.00 per year in interest charges.

The defendants, Robert A. Mann and Bank of the Southwest, were to agree that if the $4,000,000.00 principal was reduced, but not paid in full, by the defendant, Robert A. Mann, then in such event, the amount of money required to be kept by the defendant, Robert A. Mann, in the non-interest bearing account at the defendant, Bank of the Southwest, would be reduced by an amount commensurate with said reduction in the principal.

The defendant, Robert A. Mann, was to cause the principal amount of the aforesaid loan to be reduced from $4,000,000.00 to $3,000,000.00, at which time the defendant, Bank of the Southwest, was to cause the rate of interest charged per annum on said loan to be increased from three per cent (3%) to four per cent (4%), notwithstanding the fact that the prime rate of interest charged by the defendant, Bank of the Southwest, at such time was six per cent (6%) per annum.

The defendant, Bank of the Southwest, was to further permit the defendant, Robert A. Mann, to reduce the amount of money required to be kept on deposit in the aforesaid non-interest bearing account at the defendant, Bank of the Southwest, from $4,000,000.00 to $3,000,000.00.

The defendant, Robert A. Mann, was to cause $1,000,000.00 of the $4,000,000.00 of monies and funds of the First National Bank of Waco, Waco, Texas, then and there on deposit with the defendant, Bank of the Southwest, to be withdrawn therefrom and was to cause the remaining $3,000,000.00 of monies and funds of the First National Bank of Waco, Waco, Texas, to continue to remain on deposit in the aforesaid non-interest bearing account at the defendant, Bank of the Southwest, whereby the use, benefit and advantage of said monies and funds were converted from the First National Bank of Waco, Waco, Texas to the use, benefit and advantage of the defendant, Robert A. Mann.

By reason of the aforesaid $3,000,000.00 continuing to remain on deposit in a non-interest bearing account at the defendant, Bank of the Southwest, the defendant, Robert A. Mann, was to receive the preferential rate of interest on the aforesaid loan of four per cent (4%) per annum, thereby saving the defendant, Robert A. Mann, approximately $110,000.00 per year in interest charges.

During the existence of the aforesaid loan, the defendant, Bank of the Southwest, was to receive a constant return on the loan made to the defendant, Robert A. Mann, at the rate of approximately seven and one-quarter per cent (7¼%) per annum notwithstanding the increase in the rate of interest charged from three per cent (3%) per annum to four per cent (4%) per annum and notwithstanding the decrease in the amount of money required of the defendant, Robert A. Mann, to be kept on deposit at the defendant, Bank of the Southwest, from $4,000,000.00 to $3,000,000.00.

To effect the object of the conspiracy and in furtherance thereof, the defendants, Robert A. Mann and Bank of the Southwest, and unindicted co-conspirator Weyman W. Horadam committed divers overt acts, among which are the following:

1. On, or about, December 12, 1969, defendant, Robert A. Mann and unindicted co-conspirator Weyman W. Horadam had a meeting in Houston, Texas.

2. On, or about, December 12, 1969, defendant, Bank of the Southwest made a loan to defendant, Robert A. Mann.

3. On, or about, June 11, 1970, defendant, Bank of the Southwest renewed the aforesaid loan to defendant, Robert A. Mann.

4. On, or about, January 15, 1971, defendant, Bank of the Southwest, renewed the aforesaid loan to defendant, Robert A. Mann.

5. On, or about, July 28, 1971, defendant Bank of the Southwest renewed the aforesaid loan to defendant, Robert A. Mann.

6. On, or about, August 26, 1971, defendant Bank of the Southwest, renewed the aforesaid loan to defendant, Robert A. Mann.

(Violation: Title 18, United States Code, Section 371)

Both defendants filed motions to dismiss the indictment under Rule 12 of the Federal Rules of Criminal Procedure, and a hearing was held on the motions as provided by Rule 12(b)(4) of said rules. Numerous grounds for dismissal were asserted in these motions, especially that the allegations contained in the indictment did not state an offense in violation of any law of the United States, and further that the indictment should be dismissed because prosecution thereunder was in violation of several. provisions of the Constitution, especially the ex post facto clause of Section 9 of Article 1 and the due process clause of the Fifth Amendment. Defendants contended, among other things, that the indictment failed to allege an offense because the bank loan was lawful at the time it was made, that the allegations in the indictment were vague and indefinite, that defendants had been denied due process of law because the prosecution resulted in an ex post facto application of criminal statutes, and that the Government was attempting to regulate private business transactions by criminal prosecution.

At the hearing the district court allowed the defendants to introduce into evidence, over strenuous opposition of the Government, a large volume of documentary evidence, much of which came from the files of the Government. The Government's objection was that defendants were attempting to try the general issues of fact at the summary hearing on the motions to dismiss. The district judge agreed, however, with the contentions of defendants and dismissed the indictment for written reasons which he assigned as follows:

Based upon the evidence that is not in dispute, and those facts which have been stipulated, and the matters of which the Court can take judicial notice, the Court is of the opinion that the indictment must be dismissed for the following reasons and none other.

Firstly, the Defendants have been denied due process of law.

The Defendants have been denied equal protection of the law.

The indictment fails to state an offense on its face.

The indictment is too vague and indefinite to sustain a prosecution.

18 U.S.C. Sec. 656, as applied in this case, is also too vague and indefinite to sustain a criminal prosecution.

This prosecution is precluded because it violates the ex post facto clause of Section Nine of Article One of the United States Constitution.

The indictment should be dismissed because it is an unlawful retroactive application of government policy as it affects this criminal prosecution.

Lastly, the indictment must be dismissed because it is against the public policy of the United States to regulate private business by criminal prosecution as was done in this case. The Court is relying upon the *United States of America* vs. *Jack P. Ensco* [sic], No. 73–3990, Fifth Circuit, June 21, 1974.

The Court accepts the Defendants' theory of the law as it applies to the above reasons for dismissing the indictment.

For these reasons and for no others, except those stated above, the Court dismisses the indictment.

This is a FINAL JUDGMENT.

The Government has appealed the dismissal of the indictment under the Criminal Appeals Act, 18 U.S.C. § 3731. At the outset, defendants contend that the appeal is barred by the double jeopardy clause of the Fifth Amendment. They maintain that though the district judge dismissed the indictment, what he actually did in fact was to acquit the defendants upon findings of facts outside the indictment which constituted a defense on the merits. Accordingly, we must initially dispose of that issue prior to any inquiry into the question whether the indictment sufficiently sets forth a violation of a federal criminal statute, or whether defendants have been indicted and prosecuted for unconstitutional reasons requiring dismissal of an otherwise valid indictment.

## II. Double Jeopardy

In arguing that the double jeopardy clause prohibits the Government's appeal in this case, defendants rely on United States v. Lewis, 5 Cir., 1974, 492 F.2d 126. In *Lewis,* the trial court dismissed an indictment after an evidentiary hearing but prior to trial. This Court dismissed the Government's appeal from the district court's ruling and held that "double jeopardy precludes retrial when the district court has ruled in favor of the defendant on facts going to the merits of the case if these facts were adduced at an evidentiary hearing." 492 F.2d at 127. However, the Supreme Court vacated the decision in Lewis, 421 U.S. 943, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975), and remanded the case for consideration in light of the Court's decision in Serfass v. United States, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Therefore, the principles enunciated in *Serfass* are controlling on this issue.

■■ The Supreme Court in *Serfass* reiterated the principle that jeopardy does not attach until the defendant is " 'put to trial before the trier of facts, whether the trier be a jury or a judge.' " 420 U.S. at 391, 95 S.Ct. at 1062, quoting United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971). In *Serfass,* the district court dismissed the indictment after a pretrial evidentiary hearing. But the defendant had not waived his right to a jury trial, and jeopardy therefore had not attached as a result of an evidentiary hearing before the district court. The Supreme Court noted that "[i]n such circumstances, the District Court was without power to make any determination regarding [the defendant's] guilt or innocence." 420 U.S. at 389, 95 S.Ct. at 1063. "Without risk of determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." 420 U.S. at 391, 95 S.Ct. at 1064. Thus, under *Serfass,* a pretrial order dismissing an indictment is appealable even when the dismissal is based on facts and evidence outside the indictment. A defendant is not placed in jeopardy merely by a pretrial hearing in the district court, where trial by jury has not been waived, because the trial court is without authority to make any determination regarding guilt or innocence. The decisive inquiry is whether jeopardy had attached at the time an evidentiary hearing was held, and not simply whether such a hearing has taken place.

■ The evidence received here, over Government objection, was at a hearing under Rule 12(b)(4) on motions to dismiss the indictment, not on the general issue. Defendants not having waived their rights to a trial by jury with the consent of the Government, *see* Fed.R.Crim.P. 23(a), jeopardy has not yet attached in this case and the Government therefore may properly appeal the order dismissing the indictment.

## III. Sufficiency of the Indictment

■ An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendants of the charge against which they must defend, and second, enables the defendants adequately to plead an acquittal or conviction in bar of future prosecutions for the same offense. Russell v. United States, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962) and cases cited; United States v. Sanchez, 5 Cir., 1975, 508 F.2d 388, 395. Whether the indictment sufficiently alleges a crime is an issue of law, not of fact. United States v. Miller, 5 Cir., 1974, 491 F.2d 638, 647, *cert. denied,* 419 U.S. 970, 95 S.Ct. 236, 42 L.Ed.2d 186; *see* Fed.R.Crim.P. 12(b)(1). On review of an order dismissing an indictment, the indictment is to be tested not by the truth of its allegations but "by its sufficiency to charge an offense," United States v. Sampson, 371 U.S. 75, 78–79, 83 S.Ct. 173, 175, 9 L.Ed.2d 136 (1962), since the allegations contained in the indictment must be taken as true. United States v. National Dairy Products Corp., 372 U.S. 29, 33 n. 2, 83 S.Ct. 594, 598 n. 2, 9 L.Ed.2d 561 (1963); Boyce Motor Lines v. United States, 342 U.S. 337, 343 n. 16, 72 S.Ct. 329, 332 n. 16, 96 L.Ed.

367 (1952). A defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits. Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956).

Defendants continue to maintain here, as they did in the district court, that the indictment is insufficient to allege an offense against the United States. But they erroneously predicate this contention on evidence outside of the indictment which they introduced at the hearing on the motions to dismiss. As we have pointed out above, such evidence is irrelevant to a determination of whether the indictment itself is legally sufficient.

▉▉▉ Since the evidence in question has no bearing on the facial validity of the indictment, the district court erred in considering it when deciding whether the indictment alleged a criminal offense. Defendants contend that the evidence conclusively demonstrates that the loan transaction was not entered into "willfully," because it shows that defendants could not have had knowledge that the transaction was prohibited by law at the time it was first made.[2] Cf. 1 Devitt & Blackmar, Federal Jury Practice and Instructions § 16.13; 33 F.R.D. 523, 553 (1964). But the Supreme Court has specifically held, in reversing a district court's dismissal of an indictment, that willfullness is an "evidentiary question" that should not be determined in a Rule 12(b) proceeding. United States v. Knox, 396 U.S. 77, 83 n. 7, 90 S.Ct. 363, 367 n. 7, 24 L.Ed.2d 275 (1969); see Universal Milk Bottle Service, Inc. v. United States, 6 Cir., 1951, 188 F.2d 959, 962. As the Eighth Circuit has stated, "There is no authority under Rule 12 . . . to dismiss on the basis of a sufficiency-of-the-evidence defense which raises factual questions embraced in the general issue." United States v. Brown, 8 Cir., 1973, 481 F.2d 1035, 1041 and cases cited.

▉▉▉ The essential elements of a substantive violation of 18 U.S.C. § 656 are (1) that the accused was an officer, director, etc. of a bank, (2) that the bank was connected in some capacity with a national or federally insured bank, (3) that the accused willfully misapplied the money, funds, etc. of said bank, and (4) that the accused acted with intent to injure and defraud said bank. Garrett v. United States, 5 Cir., 1968, 396 F.2d 489, 491, cert. denied, 393 U.S. 952, 89 S.Ct. 374, 21 L.Ed.2d 364; United States v. Fortunato, 2 Cir., 1968, 402 F.2d 79, 82, cert. denied, 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463; United States v. Kernodle, M.D.N.Car., 1973, 367 F.Supp. 844, 850; United States v. Vannatta, D.Haw., 1960, 189 F.Supp. 939, 941.[3] See also United States v. Bearden, 5 Cir., 1970, 423 F.2d 805, 810–811, cert. denied, 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 68 (indictment under section 656 sufficient if

2. The Government, both before the district court and here on appeal, strongly objected to the district court's consideration of evidentiary matters contradicting the allegations of the indictment. We believe the objection was well taken. Defendants place themselves in a dilemma responding to this contention. For example, defendant Mann argues on one hand that this appeal should be dismissed on double jeopardy grounds "because the decision of the trial court rests upon evidentiary facts outside the indictment, which facts would constitute a defense on the merits at trial." Brief at p. 5. Subsequently, however, in responding to the Government's attack on the propriety of the extensive evidentiary hearing, it is asserted that "[e]vidence was not offered by Appellees at the Rule 12 hearing for the purpose of disproving the well plead allegations of the indictment." Brief at p. 41. Defendant Mann's first version of the hearing is more accurate.

3. "Intent to injure or defraud" is an essential element of a Section 656 violation and must be proved. Some cases have suggested, however, that this need not specifically be alleged because the allegation of willful misapplication sufficiently imports an intent to injure or defraud. See Ramirez v. United States, 9 Cir., 1963, 318 F.2d 155, 157–158; Reviser's Note to 18 U.S.C. § 656. Since the indictment in this case specifically alleges that the defendants acted with intent to injure or defraud, we need not decide whether failing to so allege constitutes a fatal defect in an indictment.

set out in language of the statute). Since the indictment alleged a conspiracy to commit all the substantive elements constituting a misapplication of bank funds under 18 U.S.C. § 656, it sufficiently alleged a violation of federal criminal statutes.

 Other contentions by defendants that the indictment is insufficient are without merit. It is not necessary for the Government to allege that the misapplication was without the knowledge and consent of the First National Bank of Waco or its board of directors, since such consent is a matter of defense. United States v. Klock, 2 Cir., 1954, 210 F.2d 217, 220 (Frank, J.); Mulloney v. United States, 1 Cir., 1935, 79 F.2d 566, 581, cert. denied, 296 U.S. 658, 56 S.Ct. 383, 80 L.Ed. 468. It is not necessary for the Government to allege or prove that the bank actually suffered any loss as a result of defendants' actions. United States v. Rickert, 5 Cir., 1972, 459 F.2d 352, 354; United States v. Acree, 10 Cir., 1972, 466 F.2d 1114, 1118, cert. denied, 410 U.S. 913, 93 S.Ct. 962, 35 L.Ed.2d 278 (1973); United States v. Fortunato, 2 Cir., 1968, 402 F.2d 79, 81, cert. denied, 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463. Nor is it necessary for the Government to allege in the indictment that the bank's funds were converted to the use of the defendants or others, for it is not necessary to set forth the means by which the offense was committed. United States v. Fortunato, supra, 402 F.2d at 82; United States v. Moraites, 3 Cir., 1972, 456 F.2d 435, 440–441, cert. denied, 409 U.S. 891, 93 S.Ct. 109, 34 L.Ed.2d 148. Though it was not necessary to allege conversion, the indictment does allege that the monies and funds of the First National Bank of Waco were "converted to the use, benefit and advantage of the defendant, Robert A. Mann," and thoroughly details

how the conversion was accomplished. Conversion is sufficiently alleged in this indictment, though it was not necessary that the indictment do so. Since the term "misapplied" has acquired its own technical meaning, alleging misapplication is sufficient to charge an individual with a crime, see United States v. Wilson, 5 Cir., 1974, 500 F.2d 715, 720; United States v. Moraites, supra, 456 F.2d at 440–441 & n. 9; United States v. Meyer, 5 Cir., 1959, 266 F.2d 747, 754, cert. denied, 361 U.S. 875, 80 S.Ct. 138, 4 L.Ed.2d 113, and an indictment alleging the misapplication of funds is not unconstitutionally vague. See, e. g., United States v. Wilson, supra, 500 F.2d at 720; United States v. Cooper, 10 Cir., 1972, 464 F.2d 648, 651, cert. denied, 409 U.S. 1107, 93 S.Ct. 902, 34 L.Ed.2d 688 (1973); United States v. Fortunato, supra, 402 F.2d at 82.

We are in agreement, therefore, with the recent decision of the Tenth Circuit which held that an indictment alleging the use of an interbank deposit as a compensating balance for a loan at a preferential rate to an official of the depositing bank alleges an offense in violation of 18 U.S.C. § 656. United States v. Brookshire, 10 Cir., 1975, 514 F.2d 786.[4] Since the indictment in the present case alleged a conspiracy to misapply bank funds in order to receive a preferential interest rate, the indictment sufficiently alleges an offense.

IV. Dismissal of the Indictment on Constitutional Grounds

 Defendants raise numerous challenges to the application of the criminal statute to them under the facts of the case. The first contention that prosecution is barred by the ex post facto clause of the Constitution is without merit. It is settled that the ex post fac-

---

4. Defendants seek to distinguish the Brookshire case chiefly on the basis that the compensating balance agreement in question in that case was entered into after the issuance of Circular 31 (see infra). But, as we have stated, the presence or absence of Circular 31 in this case is irrelevant to the issue whether the indictment alleges an offense. Moreover, even assuming that Circular 31 and its date of issuance, October 22, 1970, is significant, the Government alleges (and it must be accepted as true) that the loan in question was renewed on several occasions after the issuance of Circular 31.

to clause is applicable to a law which "makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action" or one which "aggravates a crime, or makes it greater than it was, when committed." Calder v. Bull, 3 Dall. (3 U.S.) 386, 390, 1 L.Ed. 648 (1798). The misapplication statute is an old statutory prohibition, enacted in its present form in 1948, see 62 Stat. 729, but having antecedents going back into the 19th Century. See Rev.Stat. 5209, p. 1007 (1873–74); United States v. Britton, 107 U.S. 655, 2 S.Ct. 512, 27 L.Ed. 520 (1883). Inasmuch as the statute and its penalty long predated the present prosecution, the indictment is not prohibited by the ex post facto clause.

█ Defendants also argue, however, that this prosecution is prohibited because it constitutes an ex post facto application of criminal sanctions and is an unlawful retroactive application of government policy. They contend that there had been no prosecutions of the present nature or specific warning that the conduct under scrutiny in this case was deemed to be criminal prior to the issuance of Banking Circular No. 31 in 1970, by the Comptroller of the Currency, and that the loan agreement in question was consummated prior to the issuance of Circular 31. Circular 31 was sent to the presidents of all national banks on October 22, 1970, at the request of the Justice Department, some ten months after the consummation of the Mann-Bank of the Southwest loan on December 12, 1969. It advised the bank presidents that although there were no cases "at the present time" construing the use of compensating balances to obtain a preferential rate of interest to be a misapplication of funds under the criminal statutes, some such situations might warrant prosecutive action. Additionally, defendants point to a March 21, 1973, letter from Comptroller of the Currency Camp to Assistant Attorney General Petersen in which the Comptroller stated, "It does not appear either possible or fair to charge Mr. Mann or the Bank of the Southwest or the First National Bank of Waco with a willful violation." Moreover, Camp stated, "[I]t appears to me that all parties endeavored to comply in good faith with all governmental requests made upon them and with the law and that it would not be equitable to ask for an indictment based on these facts." Defendants further note that regular bank examinations subsequent to the issuance of Circular 31 gave no indication that the loan in question was considered to be in violation of law. They also point to the fact that when the Deputy Comptroller of the Currency questioned the propriety of the compensating balance and suggested a reduction in the amount of the account, prompt action was taken to reduce the balance on deposit to an appropriate level.[5] Additionally, defendants refer to a letter from John C. Keeney, Chief of the Fraud Section of the Department of Justice, to United States Attorney Anthony Farris dated May 4, 1971, in which Keeney stated in part, "Only in an exceptionally aggravated situation occurring before the cut-off date involving substantial loss and where the defense of common practice might be overcome, should prosecution under any theory be considered."[6]

---

**5.** The letter to the First National Bank of Waco by Deputy Comptroller of the Currency Gwin is viewed in a different light by the Government. The letter was dated January 25, 1972, one year and three months after the issuance of Circular 31. Gwin's letter states that the Waco Bank's compensating balance with Bank of the Southwest "appears to greatly exceed your bank's legitimate needs." The letter notes that the compensating balance increased some 1,600%, from about $250,000 to $4,000,000, and states that this "marked increase . . . coincided with the Bank of the Southwest's grant of a $6,900,000 3% interest rate loan to Robert A. Mann, Chairman of your board." The Government contends this letter indicates not only that the compensating balance was not justified by legitimate business reasons, but also that the arrangement continued for some time after the issuance of Circular 31.

**6.** Keeney's letter also states:

Although we are satisfied that, in some instances, this practice clearly evinces a mis-

In Raley v. Ohio, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), the Court held that a citizen could not be convicted "for exercising a privilege which the State clearly had told him was available to him" or if the government conduct constitutes "active misleading" of a person in order to prosecute him. *Id.* at 438, 79 S.Ct. at 1266. The Court reiterated the policy of proscribing certain types of prosecutions in United States v. Laub, 385 U.S. 475, 87 S.Ct. 574, 17 L.Ed.2d 526 (1967), where, in affirming the dismissal of an indictment, the Court said, "Ordinarily, citizens may not be punished for actions undertaken in good faith reliance upon authoritative assurance that punishment will not attach." *Id.* at 487, 87 S.Ct. at 581. The present case, however, differs from the situations in *Raley* and *Laub*. Only an allegedly widespread practice of entering into preferential loans of the kind involved here, together with an absence of prior prosecutions, can be said to require dismissal of the indictment under the *Raley-Laub* rationale. But the Government has never approved the making of loans under the circumstances here, nor has it previously vouched for the propriety of such transactions. However, governmental silence is not "affirmative assurance that punishment will not attach" and a mere absence of prior prosecutions does not constitute "active misleading," and the decisions in *Raley* and *Laub* are thus not applicable to the circumstances in this case. As the Tenth Circuit said of the compensating balance practice in United States v. Brookshire, *supra,* "If, as defendant[s] say, this practice is the usual way in which bankers do business, those who engage in it must suffer the penalty which the law constitutionally provides." 514 F.2d at 790.[7]

use of the funds and credits of a bank, it is believed that the prevalence of the practice and the failure of the regulatory agencies to curtail the activity, will make it difficult to predicate a prosecution on conduct occurring before the above dates [the dates on which the Justice Department's views were disseminated to federally supervised and insured banks.].

The letter further states that the Fraud Section of the Department of Justice should be consulted before considering any prosecution. The Fraud Section ultimately approved the present prosecution.

7. Defendants and the district court relied heavily on United States v. Insco, 5 Cir., 1974, 496 F.2d 204, in support of the contention that the prosecution in this case was an unlawful retroactive application of government policy. In *Insco,* this Court reversed the conviction of an unsuccessful candidate for federal office for failing to place an attribution clause on bumper stickers distributed by him, in violation of 18 U.S.C. § 612. Three factors led the Court to this decision: (1) silence in the legislative history of the statute made it unclear whether Congress intended to encompass bumper stickers in the attribution clause requirement, (2) there had been a "universal practice" among candidates of *not* affixing such clauses to bumper stickers, and (3) the case was the first such prosecution ever brought by the Justice Department. 496 F.2d at 208. We reversed Insco's conviction because he had been "lulled into the reasonable impression" that his actions were not criminal. *Id.* at 209.

Defendants argue that the same reasoning is applicable here. But it is not, for a number of important reasons. First, the finding of a "universal practice" to which Insco's conduct conformed was made after the presentation of evidence by both sides at a trial on the merits before a district judge. Here, only the defense has offered evidence, and that at a pretrial hearing on motions to dismiss the indictment. The Government must be given an opportunity to refute this evidence or to establish that, at the least, defendants' conduct amounted to "reckless disregard of the interest of a bank . . . ." United States v. Wilson, *supra,* 500 F.2d at 720. Additionally, the defendant's total lack of notice was a critical aspect of the decision in *Insco.* The indictment herein, however, alleges that the loan transaction in question was renewed after the issuance of Circular 31, which provided notice of the possible criminal jeopardy of such transactions. Most important, however, is the fact that the Court's action in *Insco* took place after trial, and not before. The decision in *Insco* is authority only for the proposition that, under the facts of that case, it was improper to *convict* Insco. The Court's opinion does not relate to the issue in this case, which is whether the Government may *try* the defendants. This distinction is also applicable to Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), relied on by defendants. Whatever the merits of an *Insco* defense under the facts of this case, defendants will have an opportunity to raise it at trial. *Cf.* United States v. Pennsylvania Industrial Chemical Corp., 411 U.S. 655, 674–675, 93 S.Ct. 1804, 1816–1817, 36 L.Ed.2d 567 (1973); United States v. Murdock, 290 U.S. 389, 395–396, 54 S.Ct. 223, 225–226, 78 L.Ed. 381 (1933).

Defendants next contend that the indictment should be dismissed because they were unfairly singled out for prosecution. They assert that the compensating balance practice is widespread, and that prosecuting the defendants herein but not others who have engaged in similar activities constitutes selective prosecution which deprives defendants of equal protection of the law. It is the prerogative of the executive to initiate criminal proceedings, *see* United States v. Cox, 5 Cir., 1965, 342 F.2d 167 (*en banc*), *cert. denied,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700; United States v. Raven, 5 Cir., 1974, 500 F.2d 728, 733 & n. 14, *cert. denied,* 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975); United States v. Ream, 5 Cir., 1974, 491 F.2d 1243, 1246, and at this pretrial stage of the present case we hold that "the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions." United States v. Cox, *supra,* at 171. In Newman v. United States, 1967, 127 U.S. App.D.C. 263, 382 F.2d 479, the court held that the decision to prosecute one person rather than another is not reviewable, and that it is not the function of the judiciary to review the exercise of executive discretion in this regard. *Id.* at 482 (Burger, J.)

Moreover, this Court held in United States v. Raven, *supra,* a case in which a similar defense was raised, that Raven's argument that his conviction should be set aside because he was singled out as the first subject of a criminal prosecution, despite the presence of numerous other violations of the same criminal statutes by others, was insufficient of itself to require reversal. 500 F.2d at 733.

Defendants' contention that the prosecution here is in bad faith because of selectivity must fall in the face of these authorities and of the undisputed information furnished by the United States relative to the numerous conferences afforded defendants and their counsel at the highest levels of the Attorney General's office prior to presentation of the matter to the Grand Jury.

Defendants further assert that this prosecution contravenes the public policy of the United States by attempting to regulate private business through criminal prosecutions. It is not for the courts to decide whether a criminal prosecution contravenes some vaguely defined "public policy." Indeed, it has been stated that "public policy favors the unencumbered enforcement of criminal laws . . . ." United States v. St. Regis Paper Co., 2 Cir., 1966, 355 F.2d 688, 693. If an indictment sufficiently alleges a violation of the laws of the United States, and the prosecution of that indictment is not precluded on constitutional grounds, *cf.* United States v. Laub, *supra* ; Raley v. Ohio, *supra,* the courts may not dismiss an indictment on grounds of public policy.

Finally, defendants allege that they are denied due process by being subjected to prosecution in this case. Many of the arguments in support of this contention are not properly before us at this stage of the case. Defendants' argument is, in short, that they are innocent and therefore should not be prosecuted. But guilt or innocence is a decision which may properly be reached only after trial on the merits and not before. *Cf.* United States v. Brown, 8 Cir., 1973, 481 F.2d 1035, 1041. The indictment was therefore improvidently dismissed and must be reinstated. We emphasize that in reversing the district court and remanding the case for further proceedings, nothing we have said in this opinion is to be construed as intimating any view whatever as to the guilt or innocence of the defendants or as to the case's disposition at trial. We hold only that a Grand Jury having sufficiently alleged in an indictment that defendants conspired to commit a criminal act, and the prosecution not being constitutionally improper, the Government must be given an opportunity to prove its case before the trier of fact.

Reversed.