UNITED STATES of America,
Plaintiff–Appellee,

v.

Ted A. MUSACCHIO, Defendant–
Appellant.

No. 90–10058.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 1991.

Decided July 30, 1991.

As Amended on Denial of Rehearing and
Rehearing En Banc July 1, 1992.

Christopher J. Cannon, Sugarman & Cannon, San Francisco, Cal., for defendant-appellant.

Robert Dondero, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before SCHROEDER, CANBY and NOONAN, Circuit Judges.

CANBY, Circuit Judge:

Ted Musacchio was found guilty of misapplication of funds in the care of Columbus Savings and Loan, and of causing a false statement to be made to the Federal Home Loan Bank Board. Musacchio appeals his convictions. He contends that the indictment charging him with misapplication was insufficiently specific to protect various rights guaranteed by the Fifth and Sixth Amendments. He further claims that due to the insufficiency of the indictment his conviction for misapplication may have been based on acts that occurred outside the statute of limitations. Musacchio also asserts that a civil stipulation made by a codefendant in a related civil action was erroneously admitted against him on the false statement charge.

We disagree and affirm.

## FACTS

Columbus Savings and Loan Association, one of the many casualties of the savings and loan crisis, was a federally insured financial institution. Ted Musacchio was president and chief executive officer of Columbus Savings from 1979 until 1985. The Board of Directors governed the financial operations of Columbus Savings and the President was obligated under the by-laws to follow the directives of his Board. As President, Musacchio also served as a member of the Board.

In 1983, Columbus Savings entered into a joint venture agreement with Frumenti Development Company to develop Serramonte Highlands, a residential housing development. This case is based on the negotiations for, and the operation, of the Serramonte Highlands project.

In 1979, prior to formation of the Columbus–Frumenti joint venture, Frumenti Development and Citation Homes had formed a joint venture to develop Serramonte Highlands. That joint venture was also called Serramonte Highlands. In 1982, Citation Homes decided to sell its interest in the joint venture for $8 million.

Peter Frumenti, a long-time friend of Musacchio, owned Frumenti Development Company, a closely-held corporation. In addition, Peter Frumenti was a leading shareholder in Columbus Savings, having purchased $100,000 in stock at Musacchio's request. In 1983, Frumenti suggested to

Musacchio that Columbus Savings buy out Citation's interest in the Serramonte Highlands project at a cost of $9.28 million.

After negotiating with Frumenti for several months, Musacchio presented the Serramonte Highlands joint venture to the Columbus Savings Board of Directors.[1] The Board adopted a "Resolution Authorizing Serramonte Highlands Project" but required as conditions to that resolution that Frumenti not receive any money "up front" and that Frumenti personally guarantee all agreements with Frumenti Development Company. Although Frumenti had informed Musacchio that he would be taking money up front and that he would not furnish a personal guarantee, Musacchio advised Columbus Savings that all conditions to the Resolution had been met.

Musacchio and Frumenti then executed a joint-venture agreement which provided that Frumenti was not to receive any money up front, but which made no mention of a personal guarantee by Frumenti. Contrary to the terms of this joint-venture agreement, upon closing Frumenti did personally receive $1.28 million. Because the transaction was a double escrow, the escrow documents available to Columbus Savings did not disclose that Frumenti had received this money.[2]

Development on the Serramonte Highlands project began after the joint-venture agreement was signed. By the summer of 1985, Columbus Savings became concerned about losses from the Serramonte venture. An accounting firm was retained to conduct an audit for Columbus Savings and the Federal Home Loan Bank Board (FHLBB). The accounting firm expressed concern that Frumenti would not be able to cover his 50% share of the Serramonte losses, which were projected to be approximately $5 million. To alleviate this concern, Columbus Savings requested that Frumenti secure his obligation with three pieces of real estate. Columbus Savings, however, soon discovered that Frumenti had over-valued the three properties and that the properties were already encumbered as security for a $2.1 million loan Frumenti owed to Centennial Savings. As a result, the three properties offered as security on the Serramonte Highlands joint venture actually had a negative value.

Frumenti, however, also held stock in Delta Pacific bank. Frumenti had purchased the stock with the $2.1 million loan from Centennial. Musacchio proposed that Columbus Savings purchase the Centennial $2.1 million loan to free the stock so that it could be used as security for Frumenti's share of the Serramonte Highlands losses. As a result, Frumenti would owe Columbus Savings rather than Centennial $2.1 million, the Delta Pacific stock would be unencumbered, and Frumenti could post the stock to cover the Serramonte losses. The Columbus Board passed a resolution to purchase Frumenti's Centennial loans, but conditioned approval upon Frumenti's pledge of the Delta Pacific stock to cover Serramonte losses. Columbus Savings drafted an Addendum to reflect these terms.

Frumenti's attorneys, however, drafted their own version of the Addendum, which omitted the requirement of Delta Pacific stock as security. Similarly, Musacchio directed that the pledge of stock be deleted

---

**1.** Musacchio did not present to the Board the views of the Chief Financial Officer of Columbus, Cleet Snyder, or the views of Chief Loan Officer, Robert Kenney. Snyder had prepared and presented to Musacchio a report on the Serramonte Highlands joint venture which concluded that Columbus risked losing between $500,000 to $2 million. Kenney had evaluated the Citation buy-out and advised Musacchio that it was a bad deal for Columbus to make.

**2.** Citation had sold its interest in the Citation–Frumenti Serramonte Highlands joint venture to Frumenti for $8 million. Frumenti owned the whole project during the time it took to process one half of a double escrow. Frumenti then sold half of the Serramonte Highlands project to Columbus Savings. Citation received $4 million in cash and a promissory note from Frumenti for an additional $4 million. The note was backed by a letter of credit from Columbus Savings. Columbus Savings contributed an additional $1.3 million in cash. Frumenti received $1.28 million of this amount. The Frumenti–Columbus escrow did not show the $1.28 million to Frumenti. Columbus Savings did not see the Citation–Frumenti escrow documents.

from Columbus Savings' version of the Addendum. After this version of the Addendum was signed by Frumenti and Columbus Savings' representatives, Columbus Savings' attorney noticed that the Delta Pacific stock was not pledged and that there was no security agreement for the stock. The attorney advised Musacchio of these omissions.

At this same time, Columbus Savings' annual audit and a Form 8–K report were due to be filed with the FHLBB. The federal regulator in charge was particularly concerned that Columbus Savings was approaching insolvency and would need to sign a Consent Agreement. Columbus Savings' accounting firm, however, filed a report with the FHLBB indicating that Columbus Savings would still be solvent, with a positive regulatory capital of $1.6 million, after covering its share of the Serramonte losses. In preparing this report, the accounting firm relied on Musacchio's representation that Frumenti's half of the projected $5 million losses was secured by the Delta Pacific stock. As a result of the report, the FHLBB decided not to require Columbus Savings to sign the Consent Agreement at that time.

In October of 1985, the FHLBB examiner determined that Columbus Savings had to sign a Consent Resolution. At that time, Musacchio resigned as President of Columbus Savings.

On June 17, 1988, the grand jury returned a four count indictment against Musacchio and Frumenti.[3] The indictment charged Musacchio in Count One with the misapplication of $9.3 million from Columbus Savings on or about June 28, 1983, in violation of 18 U.S.C. § 657;[4] in Count Three with a false entry in Columbus Savings' records, in violation of 18 U.S.C. § 1006; and in Count Five with falsely stating to the FHLBB in a Form 8–K that stock was pledged as collateral for a reserve against project losses, in violation of 18 U.S.C. § 1001.[5]

The trial court granted a motion to sever the defendants' trials. After a three week trial, the jury returned a guilty verdict against Musacchio on Counts One and Five.

On appeal, Musacchio contends that the indictment as to Count One was insufficiently specific and thus failed to provide adequate notice of the scope of the charges, failed to protect against the possibility of a conviction at variance with the indictment, failed to ensure a unanimous verdict, and allowed a conviction based upon acts outside of the statute of limitations. As to Count Five, Musacchio contends that the district court erred in admitting a stipulation, made by Frumenti in an earlier civil action, that the Delta Pacific stock was never pledged.

## DISCUSSION

### Count One: Misapplication

#### I. Sufficiency of the Indictment

We review the sufficiency of an indictment *de novo*. *United States v. Bohonus*, 628 F.2d 1167, 1173 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3026, 65

---

**3.** On December 9, 1988, a superseding indictment was returned, followed by a second superseding indictment on March 15, 1989.

**4.** Section 657 provides, in relevant part:

Whoever, being an officer, agent or employee of or connected in any capacity with ... any lending, mortgage, insurance, credit or savings and loan corporation or association authorized or acting under the laws of the United States or any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation ... and whoever, being a receiver of any such institution, or agent or employee of the receiver, embezzles, abstracts, purloins or willfully misapplies any moneys, funds, credits, securities or other

things of value belonging to such institution, or pledged or otherwise intrusted to its care, shall be fined not more than $5,000 or imprisoned not more than five years, or both

. . . . .

**5.** Section 1001 provides, in relevant part:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

L.Ed.2d 1122 (1980). In judging the sufficiency of the indictment, we must determine whether it adequately alleges the elements of the crime and whether Musacchio was fairly informed of the charge against him, so that he can defend himself against the charge and plead double jeopardy against a subsequent prosecution. *See United States v. Jenkins,* 785 F.2d 1387, 1392 (9th Cir.), *cert. denied,* 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986); *United States v. Buckley,* 689 F.2d 893, 897 (9th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). The government was required to state only the essential facts necessary to apprise Musacchio of the crime charged, *see United States v. Markee,* 425 F.2d 1043, 1047–48 (9th Cir.), *cert. denied,* 400 U.S. 847, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); the government was not required to allege its theory of the case or list supporting evidence to prove the crime alleged. *Buckley,* 689 F.2d at 897. In fact, an indictment that sets forth the charged offense in the words of the statute itself is generally sufficient. *United States v. Johnson,* 804 F.2d 1078, 1084 (9th Cir.1986).

Count One of the indictment contains several introductory paragraphs discussing the Serramonte Highlands venture and identifying the principals in the transaction. A paragraph charging a violation of 18 U.S.C. § 657 follows the introduction. That paragraph reads:

ON or about June 28, 1983, in the Northern District of California,

## TED MUSACCHIO

"the defendant, while the President of Columbus Savings and Loan Association,

did knowingly and willfully with the intent to defraud Columbus, cause the misapplication of approximately $9.3 million, with said funds being in the care and custody of Columbus, an institution whose funds were insured by the Federal Savings and Loan Insurance Corporation . . ."

■■■ The elements of the crime of misapplication of bank funds are: (1) defendant is an executive officer of a bank; (2) the bank is connected with the Federal Reserve; (3) defendant willfully misapplied the bank's funds; and (4) defendant acted with intent to injure and defraud the bank. *United States v. Wolf,* 820 F.2d 1499, 1502–03 (9th Cir.1987), *cert. denied,* 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988).[6] Musacchio admits that the first, second, and fourth elements of misapplication have been sufficiently alleged, but contends that the indictment is fatally flawed as to the third element. The indictment alleges that Musacchio, on or about June 28, 1983, "cause[d] the misapplication of $9.3 million." Although this appears to state the third essential element of misapplication, Musacchio nevertheless contends that this wording is insufficient because it fails to allege the essential element of conversion. Musacchio's contention is without merit.

In *United States v. Kennedy,* 564 F.2d 1329, 1338–39 (9th Cir.1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978), this circuit rejected an argument that conversion was a necessary element of misapplication.[7] In so doing we stated that

---

**6.** *United States v. Wolf* involved the crime of misapplication of bank funds under 18 U.S.C. § 656. The elements under 18 U.S.C. § 657, however, are the same. *See United States v. Brown,* 912 F.2d 1040, 1044 (9th Cir.1990) (relying on *Wolf* and *United States v. Kennedy,* 564 F.2d 1329 (9th Cir.1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978), another § 656 case, to determine the elements of misapplication under § 657.)

**7.** In *Kennedy,* the appellant contended that the trial court committed reversible error in rejecting his proffered jury instruction. The proposed instructions would have required the jury to find not only that Kennedy had misrepresen-

ted the record with the intent that bank officials and examiners be deceived, but that Kennedy was not able to repay the loan. Kennedy relied on *United States v. Gens,* 493 F.2d 216 (1st Cir.1974), and *United States v. Docherty,* 468 F.2d 989 (2d Cir.1972) for this proposition. In those cases, the First and Second Circuits required something more than a knowing misrepresentation of the true state of the record with an intent to deceive for a defendant to be convicted of misapplication. For example, the Second Circuit reversed the defendant's conviction for aiding and abetting a misapplication in *Docherty* because no evidence was offered to show that the defendant was aware that the bank

a "misapplication of funds ... occurs when funds are distributed under a record which misrepresents the true state of the record with the intent that bank officials, bank examiners, or the Federal Deposit Insurance Corporation will be deceived." *Id.* at 1339. *See also United States v. Castro,* 887 F.2d 988, 994 (9th Cir.1989). We did not, and we do not now, require that a conversion either be proven or alleged in a misapplication charge. *See Castro,* 887 F.2d 988 (9th Cir.1989); *Wolf,* 820 F.2d 1499 (9th Cir.1987), *cert. denied,* 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988); and *Kennedy,* 564 F.2d 1329 (9th Cir.1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978).

This rule is in line with the rule in a number of other Circuits. In *United States v. Kahn,* 381 F.2d 824, 831–32 (7th Cir.), *cert. denied,* 389 U.S. 1015, 88 S.Ct. 592, 19 L.Ed.2d 661 (1967), for example, the Seventh Circuit, too, was faced with a challenge to the sufficiency of an indictment charging a section 657 violation. The defendant urged the court to find that because the indictment failed to allege the essential elements of conversion it was insufficient. The court declined to adopt such a rule and stated that it "does not require the incantation of an allegation of conversion in an indictment under § 657 ... in order for the indictment to withstand a test of its sufficiency." *Id.* at 831. *See also United States v. Mann,* 517 F.2d 259, 268 (5th Cir.1975) ("Since the term 'misapplied' has acquired its own technical meaning, alleging misapplication is sufficient to charge an individual with a crime"), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976); *United States v. Moraites,* 456 F.2d 435, 441 (3rd Cir.), *cert. denied,* 409 U.S. 891, 93 S.Ct. 109, 34

L.Ed.2d 148 (1972); *United States v. Archambault,* 441 F.2d 281, 283 (10th Cir.) (indictment did not contain an allegation that defendant converted the bank's funds, but was still sufficient in that "the statutory concept of misapplication is not a vague word of such uncertain application as to require a dismissal of the indictment"), *cert. denied,* 404 U.S. 843, 92 S.Ct. 140, 30 L.Ed.2d 78 (1971); *United States v. Fortunato,* 402 F.2d 79, 81–82 (2d Cir. 1968), *cert. denied,* 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969).

The indictment in this case alleged all four elements of misapplication, and specifically alleged that Musacchio "cause[d] the misapplication of approximately $9.3 million." Nothing more was required.

## II. Umbrella Theory in the Indictment

■ Musacchio urges alternatively that even if an indictment charging a violation of section 657 is not required to allege a conversion, the indictment in this case was still fatally flawed. That fatal flaw, according to Musacchio, was that the indictment did "not provide the framework for a specific misapplication charge, but rather provided a window through which a wide view of allegedly criminal activity could be examined." Musacchio argues that the government must allege the exact conduct in which Musacchio engaged that constituted the crime of misapplication. We find no merit in this argument and reiterate that the indictment in this case was sufficient.

As we have already pointed out, the government is not required to allege its supporting evidence in the indictment. *United States v. Buckley,* 689 F.2d 893, 897 (9th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983).

---

officer was effecting a conversion. *Docherty,* 468 F.2d at 995. In *Kennedy,* however, we stated that "neither *Docherty* nor *Gens* is good law in this circuit" and declined to require proof of a conversion in a misapplication case. *Kennedy,* 564 F.2d at 1339. We instead reaffirmed our holding in *Hargreaves v. United States,* 75 F.2d 68 (9th Cir.), *cert. denied,* 295 U.S. 759, 55 S.Ct. 920, 79 L.Ed. 1701 (1935). In *Hargreaves,* we stated that "the making of any such a report [a report with knowingly false entries made with intent to deceive] is an offense separate

and distinct from the offense of making an earlier false entry in the books of a bank." *Id.* at 71. Musacchio makes much of the fact that in *Hargreaves* we indicated that the intent element of misapplication can be satisfied where the defendant makes the loans for his private gain, or in Musacchio's view, effects a conversion. Musacchio, however, misconstrues *Hargreaves,* while intent may be inferred where the defendant made loans for private gain, the making of loans for private gain is not necessary to the finding of intent.

The indictment alleged one misapplication, that of $9.3 million on or about June 28, 1983. That allegation was sufficient to apprise Musacchio of the charge against him, and to protect against subsequent prosecutions for the same offense. *See Buckley,* 689 F.2d at 897; *United States v. Jenkins,* 785 F.2d 1387, 1392 (9th Cir.), *cert. denied,* 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986).

To prove its case, the government introduced evidence that, among other things, Musacchio falsely stated to the Columbia Savings Board that Frumenti would personally guarantee his share of the losses and not receive money up front, and that Musacchio kept other bank officers' unfavorable opinions from the Board. This evidence was properly introduced to prove the elements of misapplication. Such subsidiary evidence has often been used to support a more general charge of misapplication of bank funds in the indictment. *See United States v. Castro,* 887 F.2d 988, 994–95 (9th Cir.1989); *United States v. Wolf,* 820 F.2d 1499, 1503 (9th Cir.1987), *cert. denied,* 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988); *United States v. Kennedy,* 564 F.2d 1329, 1333, 1341 (9th Cir. 1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978). It was not necessary for Musacchio's indictment to allege this evidentiary material. There was no unfair surprise to Musacchio; it was clear enough that the trial would focus on the documentation and representations underlying and leading to the $9.3 million outlay.

### III. Jury Instructions [8]

Musacchio contends that the jury instructions were defective for two reasons. First, the jury instructions failed to cure the flawed indictment because they "didn't include any type of conversion element ...." Because we have held that conversion is not a necessary element of misapplication, Musacchio's argument fails.

Second, Musacchio contends that the jury instructions allowed a conviction solely based upon a misrepresentation, and thus failed to make the critical distinction between a misapplication and a false statement. Specifically, Musacchio contends that the instructions did not require a finding of "any taking of money." Although the district court's instruction on misapplication was not crystal clear, it adequately informed the jury that in order to convict Musacchio of misapplication, money had to be misapplied or distributed.[9] In explaining the third element of misapplication, the district court stated: "Number three, that Mr. Musacchio used the money of Columbus ...." This required the jury to find more than that Musacchio had merely made false statements to the Board.[10]

### IV. Specific Unanimity Instruction [11]

Musacchio next contends that the district court erred by failing to give a specific unanimity instruction.[12] No such instruction was required in this case.

**8.** The district court instructed the jury:
Number one, that Mr. Musacchio was an officer of Columbus. I don't think there's any doubt about that one. Number two, that Columbus Marin was an institution whose deposits were insured by the Federal Savings and Loan Insurance Corporation; Number three, that Mr. Musacchio used the money of Columbus in a way that was contrary to the intentions of the board of directors of Columbus; And, Four, that he did so willfully and with the intent to injure or defraud the Savings and Loan Association.

**9.** In contrast, a defendant can be convicted under 18 U.S.C. § 1001 for knowingly making a false entry even where no funds are distributed.

**10.** Moreover, it does not appear from the record that this element of misapplication was even contested at trial. The parties agree that $9.3 million in the care of Columbus Savings were distributed.

**11.** The district court gave a General Unanimity Instruction:
Now, your verdict, whether guilty or not guilty, must be unanimous and must be unanimous on each count. I want to repeat that, because it's very important: you will have three decisions to make. Your decisions on each of those must be unanimous, whether the decisions are guilty or the decisions are not guilty.

**12.** Because Musacchio failed to request such an instruction, our review is limited to review for plain error. *See United States v. Payseno,* 782 F.2d 832, 834 (9th Cir.1986). We note that only

■ The crux of Musacchio's argument is that because the indictment was insufficiently specific, a unanimity instruction was essential to insure that the jurors agreed as to which acts Musacchio committed that constituted the crime. This court has held that a specific unanimity instruction may be required in cases where the indictment is sufficiently broad and ambiguous so as to present a danger of jury confusion. *See e.g., United States v. Gordon,* 844 F.2d 1397, 1401 (9th Cir.1988); *United States v. Payseno,* 782 F.2d 832, 836–37 (9th Cir.1986). However, because we have concluded that the indictment in this case was drafted with sufficient clarity, and the issues concerning the underlying false statements were clearly drawn, it was not plain error for the district court to fail to give a specific unanimity instruction.

## V. Statute of Limitations

■ Musacchio further contends that his conviction on Count One may be founded upon acts occurring outside the five year statute of limitations period. Musacchio seems to be arguing that because his misrepresentations to the Board occurred more than five years before the indictment was returned, the government should have been barred from introducing evidence of these misrepresentations.[13] In so arguing, Musacchio is attempting to convert the statute of limitations from a procedural rule that requires the bringing of a complaint within a certain time after the completion of a crime to a rule that restricts the introduction of evidence. We find no support for this use of the statute of limitations.

■ A statute of limitations begins to run when "the crime is complete". *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970) (citing *Pendergast v. United States,* 317 U.S. 412, 418, 63 S.Ct. 268, 271, 87 L.Ed. 368 (1943)). A crime is complete as soon as every element in the crime occurs. The misapplication crime charged in this case was complete on or about June 28, 1983, when the $5.3 million and a note for $4 million left the control of Columbus Savings. The indictment was returned less than five years later, on June 17, 1988. The statute of limitations did not bar the bringing of this action. The function of the statute of limitations ends with this determination. The statute of limitations does not bar the introduction of evidence of acts that occurred outside the limitations period.[14]

### Count Five: False Statement

■ Musacchio challenges the admission of the stipulation entered into between Frumenti and the FSLIC in a collateral civil suit on two grounds.[15] First, Musacchio contends that the stipulation is not relevant to this case. Second, Musacchio contends that even if relevant, the stipulation is inad-

"[r]arely will an improper jury instruction justify a finding of plain error." *United States v. Bordallo,* 857 F.2d 519, 527 (9th Cir.1988), *modified on other grounds,* 872 F.2d 334 (9th Cir. 1989), *cert. denied,* 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989).

13. An alternative interpretation of Musacchio's argument is that the misrepresentations that occurred more than five years before the indictment was returned are the actual acts for which he was convicted, rather than *evidence* of the misapplication. This is a creative way of rearguing his earlier contentions that the indictment was insufficiently specific, that his conviction may be based on a mere misrepresentation, and that his conviction may be based on varying theories presented by the government. Because we earlier rejected these arguments, we need not now readdress them in analyzing Musacchio's statute of limitations argument.

14. For example, see *United States v. Drebin,* 557 F.2d 1316 (9th Cir.1977), *cert. denied,* 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978). Drebin was charged with interstate transportation of stolen goods. We held that the indictment was not barred where the interstate transportation occurred within five years before the indictment was returned. We did not require, however, that the thefts occurred within that period even though evidence of the thefts was admitted to prove the crime. *Id.* at 1333.

15. Frumenti's attorney and the attorney for the FSLIC entered into a stipulation in the Superior Court of the County of Contra Costa in the Matter of Columbus Savings and Loan versus Frumenti Development Corporation, that the Delta Pacific stock does not secure performance under the joint venture agreement, particularly as to reimbursement of joint venture losses.

missible hearsay. Musacchio's two contentions were not raised at trial. By failing to make a specific objection at trial, Musacchio failed to preserve these evidentiary issues for appeal. *See United States v. Gomez–Norena,* 908 F.2d 497, 500 (9th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990). Accordingly, we review these contentions for plain error. *Id.*

 Musacchio himself defeats his first contention, that the stipulation was not relevant: In his brief to this court, Musacchio points out that the "stipulation was admitted as proof of a critical fact...." We agree. The stipulation tended "to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Fed. R.Evid. 401.

Musacchio's second contention is likewise without merit. Even if the stipulation constitutes inadmissible hearsay, admission of that evidence was not plain error. The stipulation indicated that Frumenti had not pledged the Delta Pacific stock as security for his share of the Serramonte losses. This evidence was cumulative of other evidence admitted at trial without objection. At trial, Peter Frumenti, as well as two other witnesses [16], testified that the stock was not pledged. Moreover, the record indicates that in opening statements and in direct examination of Frumenti, Musacchio's own counsel referred to the stipulation and to the fact that the stock was not pledged.[17]

We are satisfied upon reviewing the record that the district court did not commit plain error.

16. The other two witnesses that so testified were Michael Bonnifield and Craig Andersen, legal counsel for Columbus Savings.

17. In opening statements, Musacchio's counsel stated: "And the stock wasn't pledged. And that's the bottom line as to what happened."

. . . . .

"The [Columbus Savings] Directors saw the actual agreement, the actual addendum to the joint venture agreement, which, in civil litiga-

## Conclusion

The judgment of the district court is AFFIRMED.

tion, Peter Frumenti now claims doesn't pledge the stock."

. . . . .

"Peter Frumenti lied when he was going into the agreement. He lied during the course of the agreement. He stole money, and you'll hear some testimony about that. And he lied when it came to pledging the collateral for the joint venture."