**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ronald S. CARLSON, Defendant–**
**Appellant.**

**No. 99–10525.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 2000

Filed Dec. 19, 2000

Peter C. Wolff, Jr., Federal Public Defender, Districts of Hawaii and Guam, Honolulu, Hawaii, for the defendant-appellant.

J. Michael Seabright, Assistant United States Attorney, Honolulu, Hawaii, for the plaintiff-appellee.

Before: HUG, TROTT, and WARDLAW, Circuit Judges.

TROTT, Circuit Judge:

Ronald S. Carlson appeals his jury convictions for felony tax evasion under 26 U.S.C. § 7201. Carlson was convicted of three counts of evasion of assessment of taxes and two counts of evasion of payment. Carlson argues that the evidence was insufficient to convict him, and also raises several claims of error in the jury instructions. We have jurisdiction under 28 U.S.C. § 1291, and AFFIRM the convictions.

## BACKGROUND

Until his convictions for tax evasion, Ronald Carlson ("Carlson") was a successful dentist in Honolulu, Hawaii. His practice earned him a substantial income which, in turn, resulted in substantial tax liability. Like most people, Carlson has sought to minimize his tax liability. However, rather than taking advantage of legitimate exclusions and deductions to income provided for in the Internal Revenue Code, Carlson has concluded that the code simply does not apply to him. His theory, apparently, is that he is not a "person" subject to the code.

Carlson has been utilizing this theory for nearly twenty years. He has not filed a tax return since 1983. Moreover, he claimed to owe no taxes at all in his returns for 1981, 1982 and 1983, despite earning substantial income in those years. The IRS audited each of these returns, and assessed taxes totaling $19,011, excluding interest and penalties. Carlson has paid only a fraction of this sum.

After waiting unsuccessfully for Carlson to pay the balance voluntarily, the IRS decided to take more aggressive collection measures by levying on his bank accounts. The IRS issued a total of seventeen levies to First Hawaiian National Bank ("First Hawaiian") and various other institutions at which the IRS believed Carlson had accounts or assets. Despite Carlson's substantial income, the IRS collected less than $1000 through these levies.

In 1993, the IRS initiated a criminal investigation of Carlson due to his continued failure to file tax returns. During this investigation, IRS Agent Bobbiesue Backers discovered that a check drawn on Carlson's First Hawaiian account had been deposited into an account at Central Pacific Bank ("Central Pacific"). By issuing a summons to Central Pacific, Agent Backers discovered that Carlson kept two accounts at that bank. Although Carlson used variations on his actual name in the applications for those accounts, he listed false social security numbers, dates of birth, and places of birth.

Carlson used these Central Pacific accounts to hide his assets from the IRS. His practice was to deposit all the gross receipts from his dental practice into the First Hawaiian account. He would then withdraw large amounts of cash from that account, and deposit most of that cash into one of the two Central Pacific accounts.

After this information came to light, Carlson was charged with five counts of felony tax evasion in violation of 26 U.S.C. § 7201. On February 5, 1998, the government filed its first indictment, which charged Carlson with three counts of evasion of assessment of taxes for the years 1991, 1992, and 1993. On August 20, 1998, the government filed a superseding indictment, adding Counts Four and Five charging Carlson with evasion of payment of tax due for the years 1981, 1982, and 1983. The jury found Carlson guilty on all counts, and he now appeals to this court.

## DISCUSSION

### A. Sufficiency of Evidence

■ Carlson first argues that the evidence was insufficient to establish that he had committed an affirmative act of evasion. Because Carlson failed to renew his motion for acquittal at the close of all the evidence, we review for plain error his claim of insufficiency of the evidence. *See United States v. Kuball,* 976 F.2d 529, 531 (9th Cir.1992).

■ In order to convict Carlson of felony tax evasion under 26 U.S.C. § 7201, the government had to prove the following elements: 1) the existence of a tax deficiency, 2) willfulness, and 3) an affirmative act of evasion or affirmative attempt to evade. *See Spies v. United States,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). It is the "affirmative act" or "affirmative attempt" requirement that distinguishes felony tax evasion from the misdemeanor offenses proscribed by 26 U.S.C. § 7203. "Willful but passive neglect of the statutory duty

may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony." *Id.* at 499, 63 S.Ct. 364. Carlson does not dispute that the government proved the first two elements, but argues that he committed no affirmative act of evasion, and therefore was guilty of a misdemeanor offense at most.

■ A review of evidence presented at trial discloses that Carlson clearly engaged in affirmative acts of evasion. Both documentary evidence and the testimony of Carlson's former attorney established that Carlson opened two accounts at Central Pacific Bank using false social security numbers after learning that the IRS was attempting to levy on his bank account at First Hawaiian. In addition, documentary evidence and Agent Backers's testimony showed that Carlson deposited his gross receipts into the First Hawaiian account, withdrew large amounts of cash from it, and deposited most of that cash into the secret Central Pacific accounts.

Carlson gamely contends that these actions were not conduct "the likely effect of which would be to mislead or to conceal." *Spies,* 317 U.S. at 499, 63 S.Ct. 364. In effect, he argues that although he set up the accounts with the false social security numbers with the intention of evading taxes, this step was too feeble to fool the IRS. This argument is wholly without merit.

Legally, Carlson is correct that *Spies* requires that the affirmative attempt of evasion be likely to mislead. *See id.* at 499, 63 S.Ct. 364. However, in *Edwards v. United States,* 375 F.2d 862, 866 (9th Cir. 1967), we emphasized that a broad range of acts may satisfy this requirement. We held that while the affirmative act must generally "serve[ ] the purpose of evasion," Congress did not intend "to establish a hierarchy of attempts or evasions and limit § 7201 to those of a more deceitful or troublesome character." *Id.* Carlson's conduct falls well within this broad reading of the affirmative act element of the offense of felony tax evasion.

Moreover, it is clear as a factual matter that Carlson's acts of opening and using the Central Pacific accounts with false social security numbers, places of birth, and dates of birth could easily have misled the IRS or concealed information from it. These acts effectively hid Carlson's assets from the IRS. Without being able to determine how much money Carlson earned and how he spent that money, the IRS could not determine his taxable income. In addition, testimony at trial established that banks generally require a social security number as well as a name in order to levy on a customer's account. Thus, the false social security number would likely have thwarted the IRS's attempts to assess Carlson's taxes and collect the money he already owed.

Finally, the jury instructions included the language from *Spies* that Carlson relies on. The trial judge specifically instructed the jury that "[a]n affirmative attempt to evade or defeat either the assessment or payment of a tax may be accomplished in any manner, and by any conduct, *the likely effect of which would be to mislead or conceal.*" (emphasis added). Because the jury instructions specifically included the language that Carlson relies on, and because Carlson's acts could have misled the IRS, we will not disturb his convictions.

## B. Statute of Limitations

Carlson also raises a rather convoluted argument regarding the statute of limitations. Because he failed to raise the statute of limitations as an affirmative defense in the district court, he has attempted to recast the statute of limitations as an attack on the propriety of the jury instructions. Reduced to its essence, Carlson's argument is that he could not be convicted unless the affirmative act of evasion occurred within the statute of limitations, and that the jury should have been given

an instruction to this effect. Carlson is wrong.

### 1. Standard of Review

■ Because Carlson has cast the statute of limitations argument as an attack on the jury instructions, our standard of review for jury instructions will govern. Because Carlson did not request an instruction on the statute of limitations at trial, we review for plain error. *See United States v. Anderson*, 201 F.3d 1145, 1148 (9th Cir.2000).

### 2. Discussion

#### a. Evasion of Assessment Charges

Although Carlson does not claim that the prosecution was not timely, it is helpful to discuss the statute of limitations issue in a straightforward manner before turning to Carlson's more convoluted claim.

[6] In this case, there is no question that the indictments for evasion of assessment of taxes were filed within the six-year statute of limitations. Carlson's arguments regarding the statute of limitations are based on the faulty premise that the statute of limitations began to run when he committed the affirmative acts of evasion. However, the statute of limitations for evasion of assessment begins to run from the occurrence of the last act necessary to complete the offense, normally, a tax deficiency. *See e.g., United States v. Payne*, 978 F.2d 1177, 1179 (10th Cir.1992); *United States v. DiPetto*, 936 F.2d 96, 98 (2d Cir.1991); *United States v. Williams*, 928 F.2d 145, 149 (5th Cir.1991). A taxpayer normally incurs a deficiency on April 15 of a given year, when tax returns are due.

Carlson's tax return for the year 1991 became due on April 15, 1992. The return for 1992 was due on April 15, 1993, and the return for 1993 was due on April 15, 1994. Thus, prosecution on each of the three

evasion of assessment charges had to be commenced by April 15 of the years 1998, 1999, and 2000, respectively. The United States filed its original indictment which included Counts One, Two, and Three on February 5, 1998. Therefore, as a matter of law, the indictments for evasion of assessment of taxes were filed within the six year statute of limitations.

■ In arguing that the affirmative act element of the offense could not be based on conduct occurring outside the statute of limitations, Carlson is effectively attempting to recast the statute of limitations as a rule limiting the introduction of evidence. Our precedent rejects this notion. In *United States v. Musacchio*, 968 F.2d 782, 790 (9th Cir.1992), we rejected the defendant's contention that his conviction for misapplication of funds could not be based on acts of misrepresentation that had occurred outside the statute of limitations. We stated: "[The defendant] is attempting to convert the statute of limitations from a procedural rule that requires the bringing of a complaint within a certain time after the completion of a crime to a rule that restricts the introduction of evidence. We find no support for this use of the statute of limitations." *Id.* For the same reason, we will not allow Carlson to transform the statute of limitations from a procedural rule barring the commencement of prosecutions into a rule of evidence.

#### b. Evasion of Payment Charge

■ Carlson's arguments regarding the evasion of payment charge in Count Four also fail.[1] The government filed its Superseding Indictment, which added Counts Four and Five, on August 20, 1998. Because the six year limitations period in evasion of payment cases runs from the last act of evasion, *see United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir.1987), the government had to prove that Carlson

---

1. Count Five alleged conduct that occurred entirely within the limitations period and thus presents no issue.

had committed at least one affirmatively evasive act after August 20, 1992. Count Four alleged conduct that occurred within the limitations period as well as outside it, from May of 1991 until May of 1993.

■ While it might have been preferable to instruct the jury that at least part of Carlson's conduct must fall within the statute of limitations, we will not disturb his convictions in light of the ample evidence showing that Carlson had committed evasive acts after August 20, 1992. In particular, Agent Backers's testimony clearly explained that, in 1993, Carlson had withdrawn $88,820 in cash from the First Hawaii account and deposited over $64,000 into the two clandestine Central Pacific accounts. In light of Agent Backers's testimony, Carlson cannot show that the failure to instruct the jury on the statute of limitations was reversible, let alone plain, error.

## C. Omissions Instruction

■ Carlson argues also that the jury instructions should have explicitly stated that omissions could not form the basis for a conviction. We review this claim for plain error because Carlson failed to raise it below. *See Anderson*, 201 F.3d at 1148.

Carlson's argument has no merit. Even assuming that the instructions were confusing, Carlson's argument fails because he cannot demonstrate any possible prejudice resulting from the failure to give an omissions instruction. Count Five alleged that Carlson had concealed his income from the IRS by using one of the Central Pacific accounts with a false social security number, an overt act of evasion. Counts One, Two and Three also referenced this conduct. The guilty verdict in Count Five thus supports the affirmative attempt element of the offense in Counts One through Three, and the failure to give an omissions instruction therefore cannot be plain error.

Carlson contends also that the district judge "injected a level of confusion" into the instructions on the evasion of payment charges in Counts Four and Five by telling the jury that it had to find an affirmative act of evasion beyond the mere failure to pay the tax due. This confusion, Carlson argues, stems from the fact that Counts Four and Five did not specifically refer to a "failure to pay." This argument fails. The district court's instructions completely and accurately stated the law, and it is specious to argue that a correct statement of the law could "inject confusion" into the jury's deliberations.

## D. Special Unanimity Instruction

■ Finally, Carlson argues that the district court erred in failing to give a special unanimity instruction, which would have informed the jury that it had to unanimously agree not only that Carlson was guilty, but on the specific act or acts giving rise to criminal liability. The failure to give such an instruction was not plain error. Although a defendant will sometimes be entitled to a special unanimity instruction, none of the circumstances warranting such an instruction is present here. *See United States v. Anguiano*, 873 F.2d 1314, 1319 (9th Cir.1989). The record contains no evidence that the jury was confused as to which of the alleged acts could give rise to a conviction. The indictment was not broad or ambiguous. Nor was this case factually complex. While the government introduced many detailed financial documents, testimony at trial made the overall picture of Carlson's conduct crystal clear. Agent Backers's testimony explained that Carlson deposited his gross receipts into the First Hawaiian account, withdrew large amounts of cash, and then deposited it into the secret Central Pacific accounts. For these reasons, it was not plain error to fail to give a special unanimity instruction.

## CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.