STATE OF VERMONT
ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re Keenan Conditional Use Approval | } | Docket No. 266-12-07 Vtec |
|  | } |  |

## Decision on Cross-Motions for Summary Judgment

Appellant-Applicant Anne Keenan ("Applicant") brings this appeal of a decision by the City of Burlington Development Review Board ("DRB"), denying her request for conditional use approval to maintain four residential units in a building that is currently permitted for only three units. We are now presented with cross-motions for summary judgment by the City of Burlington ("City") and Applicant.[1]

## Factual Background

For the sole purpose of putting the pending motions in context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1. Applicant owns property at 79 Spruce Street ("the Property") in the City.

2. Before 1967, a church was located on the Property.

3. In 1967, one of Applicant's predecessors-in-interest applied for a special exception to convert the church into five apartments. On March 14, 1967, the Burlington Zoning Board of Adjustment ("ZBA") denied the request.

4. On March 28, 1967, the ZBA approved a request for a special exception to convert the church into three apartments, with the stipulation that there would be no parking in the front area. This conversion apparently occurred shortly after the ZBA issued its approval.

5. On August 8, 1967, the ZBA denied a request for a special exception to convert the three-unit building at the Property to a four-unit building.

6. At some point before January 18, 1972, one of Applicant's predecessors-in-interest converted the three-unit building at the Property to a four-unit building. The predecessor-in-interest then applied to the ZBA for retroactive approval of this conversion.

7. On January 18, 1972, the ZBA again denied a request to grant retroactive approval to convert the three-unit building at the Property to a four-unit building.

---

[1]   Applicant is represented by Liam L. Murphy, Esq., and Pamela A. Moreau, Esq.; the City is represented by Kimberlee J. Sturtevant, Esq.

8.      Since at least 1972, the Property has been used—and continues to be used—as a four-unit residential building.

9.      Since at least 1972, tenants at the Property have consistently made use of six parking spaces: three spaces in the back of the building, and three spaces in the front.

10.     The three parking spaces in the front of the building abut—or at least come quite near to—the sidewalk.  In the municipal proceedings below, there was a dispute over whether cars and pick-up trucks parked in those spots actually impede the sidewalk.  The parties do not, however, appear to dispute that cars parked in those spots at least come within a few feet of the sidewalk, and photos submitted both by Applicant and the City confirm this to be the case.

11.     On January 10, 2000, Applicant bought the Property and continued its use as a four-unit building.

12.     On September 20, 2007, Applicant applied for conditional use approval to operate the Property as a four-unit building.

13.     On November 6, 2007, the DRB denied conditional use approval.  It is from that determination that Applicant appealed to this Court.

14.     The City has yet to initiate an enforcement action against Applicant or any of her predecessors-in-title for the construction or use of a fourth residential unit at the Property.  The parties agree that such use has continued uninterrupted for nearly forty years.

## Discussion

This municipal appeal is entitled to "a de novo hearing on those issues which have been appealed."  10 V.S.A. § 8504(h); accord 24 V.S.A. § 4472(a); V.R.E.C.P. 5(g).  In a de novo hearing, we are directed to consider the pending application "'as though no action whatever had [previously] been held.'"  Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) (quoting In re Poole, 136 Vt. 242, 245 (1978)).

We have before us cross-motions for summary judgment.  We may grant summary judgment only when "the pleadings, depositions, [and] answers to interrogatories, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law."  V.R.C.P. 56(c)(3).  Generally, the burden of proof is on the party requesting summary judgment.  Chapman v. Sparta, 167 Vt. 157, 159 (1997).  When presented with cross-motions for summary judgment, we must consider each motion in turn and afford all reasonable doubts and inferences to the party opposing the

2

particular motion under consideration. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)).

The facts relevant to this conditional use approval appeal are quite straightforward, and indeed the parties do not dispute them. In short, one of Applicant's predecessors-in-interest applied at various points for approval to have four or five residential units at the Property, but the City denied those requests on numerous occasions and only granted approval for a three-unit building. Further, the approval for the three-unit building was expressly conditioned on the stipulation that there would be no parking in the front area. Despite only obtaining approval to operate a three-unit building with parking limited to the rear area, Applicant and all of her predecessors-in-interest since at least 1972 have operated a four-unit building and allowed tenants to use three parking spaces in the front yard.

Although the parties make a number of collateral arguments in their briefs, we are unable to address them, since this Court is without authority to consider issues upon which the municipal panel never actually conducted a hearing or rendered a substantive determination. Simendinger v. City of Barre, 171 Vt. 648, 652 (2001). As the Vermont Supreme Court has frequently stated, the "reach of the [Environmental Court] in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but is not broader." In re Torres, 154 Vt. 233, 235 (1990). According to what is often called the Torres doctrine, if the municipal panel could not have done something because it was not properly noticed to the public, then the Environmental Court is also without power to do so. See id.; see also In re Maple Tree Place, 156 Vt. 484, 500 (1991) ("The [Environmental Court] is limited to consideration of the matters properly warned as before the local board." (citing Torres, 154 Vt. at 235)). Thus, we cannot address issues that were not properly warned for a hearing at the municipal level.

The appeal that is before this Court solely concerns an application for conditional use approval. The DRB was not presented below and did not consider the propriety of a possible future enforcement action, not yet instituted by the City. Although Applicant is understandably concerned about the possibility of future municipal enforcement proceedings, we could only address the validity of enforcement actions after such proceedings go through the proper municipal processes and are brought before this Court in a timely appeal. See In re Maple Tree Place, 156 Vt. at 500.

In the context of the appeal before us, the statute of limitations in 24 V.S.A. § 4454(a)—a statute that by its explicit terms only applies to enforcement actions—is simply inapplicable. We regret that we cannot address Applicant's enforcement concerns here, particularly given that the parties have expended so much effort in briefing them, and given that it undoubtedly places Applicant in the awkward situation of uncertainty regarding apparent claims by the City that its potential enforcement actions are not estopped by the limitations of 24 V.S.A. § 4454(a). Nevertheless, our Supreme Court has noted in other contexts that courts must decline to pass judgment on all issues that fall outside their jurisdiction, regardless of "the importance of the question posed." Chittenden S. Educ. Ass'n, Hinesburg Unit v. Hinesburg Sch. Dist., 147 Vt. 286, 294 (1986). To the extent that Applicant wishes to adjudicate enforcement issues, other avenues may be available, but we are without authority to adjudicate those issues in this appeal.

Turning to our de novo review of Applicant's request for conditional use approval, the analysis here is quite straightforward. The conditional use approval requested here cannot be granted if it would result in a violation of the Burlington Zoning Ordinance ("Ordinance"). See, e.g., Ordinance § 17.1.1 (noting that the DRB—and therefore also this Court standing in its stead—cannot permit any use that is prohibited by the Ordinance); see also 24 V.S.A. § 4446 ("Within the jurisdiction of any municipality that has adopted any of the bylaws authorized by this chapter, no land development may be undertaken or effected except in conformance with those bylaws.").

In analyzing the Ordinance, §§ 10.1.8 and 10.1.18 both present insurmountable hurdles for Applicant. Section 10.1.8 of the Burlington Zoning Ordinance ("Ordinance") requires that "[p]arking for all uses and structures shall be provided in accordance with Table 10-A." Turning to Table 10-A, it is unfortunately difficult to interpret which number corresponds to which line in the applicable section on multi-unit rental buildings. The City claims that two parking spaces are required per dwelling unit for a four-unit building, which would mean that eight parking spaces are needed here. This is undoubtedly the most natural reading of the ordinance, but it assumes that the numbers on the Table were each meant to be moved down a line. Although that assumption makes sense here, since it is the only explanation for the blank line at the bottom of the numbers column, we must also be mindful that any uncertainty in a zoning regulation should be decided in favor of the property owner. In re Weeks, 167 Vt. 551, 555 (1998). Here, another plausible interpretation is that all that is required for the first four units of a multi-unit rental building is 1.5 parking spaces per unit plus "[a]n additional 10% of the total spaces . . . for visitor

4

parking," which translates to a total of 6.6 parking spaces needed here. Ordinance at 10-3 & 10-3 n.1.

We need not resolve which interpretation applies here because, even if only 6.6 parking spaces are needed, Applicant cannot meet that requirement. Whenever a calculation for parking spaces results in a fraction, the number must be either rounded up or down. In this case, under the normal conventions of rounding, 6.6 would be rounded up to seven. Indeed, the Ordinance itself explicitly adopts normal rounding conventions in its statement on density calculations. Ordinance § 5.2.3 ("[F]ractional units of less than five-tenths (0.5) shall be rounded down to the nearest whole number and fractional units of five-tenths (0.5) or greater shall be rounded up to the nearest whole number."). Even absent such a statement in the Ordinance, we would adopt normal rounding conventions here. Cf., e.g., Appeal of Berezniak, No. 171-9-03 Vtec, slip op. at 9 n.5 (Vt. Envtl. Ct. July 7, 2005) (Wright, J.) (rounding up 24.56 parking spaces to 25 parking spaces).

In short, even under the most favorable interpretation of Table 10-3, Applicant is required to have at least seven parking spaces to meet the requirements of Ordinance § 10.1.8. Applicant cannot meet the minimum parking space requirement here because Applicant only has three legal parking spaces.

On March 28, 1967, when the ZBA approved the conversion of the church building on this Property into three apartments, it was done with the express stipulation that there would be no parking in the front area. That decision was not appealed and therefore cannot be contested "directly or indirectly" in a later proceeding. 24 V.S.A. § 4472(d).[2]

Even if Applicant were to apply for an amendment to this permit condition, such an amendment could not be granted here because Ordinance § 10.1.18 prohibits front-yard parking spots that abut a sidewalk: "Front yard parking for residential uses, with the exception of access drives to the site eighteen feet (18') or less in width, shall be in conformance with the required minimum front yard setback or average building line of adjacent lots, whichever distance is

---

[2]  This is not to say that Applicant is precluded from applying for an amendment to the permit condition at issue here. See In re Dunkin Donuts S.P. Approval, 2008 VT 139 (mem.). However, we do not have a permit amendment application before us and are therefore without jurisdiction to evaluate the merits of such a claim. See Torres, 154 Vt. at 235. At any rate, the requirements for amending a permit condition—be it a showing of changed circumstances, see In re Hildebrand, 2007 VT 5, ¶¶ 12–13, 181 Vt. 568, or an analysis under the successive-application doctrine, see Dunkin Donuts, 2008 VT 139, ¶ 8—are in addition to the requirements for receiving a permit in the first instance. Thus, even if Applicant were entitled to another hearing on this matter, it would appear futile, given that Applicant cannot meet the requirements of Ordinance § 10.1.18, as explained in detail in the body of this Decision.

greater." Applicant does not claim that her three parking spaces are an access drive of less than eighteen feet wide.[3] Thus, at a bare minimum, Applicant must demonstrate that her parking spaces meet the front-yard setback requirement. But even the least restrictive zones and streets require a minimum front-yard setback for residential structures of 15 feet. Ordinance at 5-23 tbl.5-D. Although the parties to the municipal proceeding below disputed whether Applicant's three front-yard parking spaces abut or even impede the sidewalk, it is undisputed that these parking spaces are less than 15 feet from the sidewalk.

We recognize that under Ordinance § 10.1.19, parking waivers are possible, if an applicant can demonstrate that less parking is needed for their use. However, Applicant has made no showing that she meets—or could meet—the requirements for such a waiver. To the contrary, Applicant alleges that she and her predecessors-in-interest have made consistent use of the three unpermitted parking spaces on the front of her property, and that such a consistent, unpermitted use is entitled to approval here.

Applicant argues that because of the consistent use of the three front-yard parking spaces, 24 V.S.A. § 4454(a) estops the City from bringing an enforcement action against these unpermitted front-yard parking spaces, and the law therefore also obligates the City to sanction their use with a zoning permit. We know of no statutory authority or legal interpretation that supports this assertion. Rather, if land development was commenced more than fifteen years ago and if 24 V.S.A. § 4454(a) restricts a municipality from acting against it, the development is non-conforming, even if it might be protected from an enforcement action. Any alleged protection from enforcement does not mean that such development is entitled to automatic issuance of a zoning permit. Applicant's argument here melds the law of enforcement with zoning approval in a manner that we are not aware is authorized by statute or legal precedent.

In regards to Applicant's three unpermitted parking spaces, we note that it is indisputable that these parking spaces do not conform to the current or past zoning regulations. In fact, their use violates the express parking conditions of the March 28, 1967 permitting approval, as well as the three explicit denials—on March 14, 1967, on August 8, 1967, and on January 18, 1972—of requests to maintain more than three units at the Property. It appears as if Applicant recognizes

---

[3] Indeed, even if Applicant made such a claim, we could not credit it given that it would be unreasonable to infer that three cars could fit in an area less than 18 feet wide. See City of Burlington, 2009 VT 59, ¶ 5 (noting that the party opposing summary judgment is only entitled to "all reasonable doubts and inferences" (emphasis added)). Indeed, under the Ordinance, even three compact cars would require 24 feet of parking space. See Ordinance at 10-8 tbl.10-D.

6

that this prior use of the front parking spaces is non-conforming. Perhaps 24 V.S.A. § 4454(a) precludes the City from commencing an enforcement action against the continued use of these parking spaces. We leave that question to when such an enforcement action is actually noticed, brought, and preserved for our review and an appeal presented to this Court. See Torres, 154 Vt. at 235. But we are unaware of any legal authority that requires the City to legitimize this non-conformity with a zoning permit. In fact, we understand the relevant precedent to be exactly the opposite: that when the opportunity arises, a municipality is authorized to not sanction non-conformities. See, e.g., In re Richards, 2005 VT 23, ¶ 6, 178 Vt. 478 (mem.) ("[O]ne goal of zoning is to phase out nonconforming uses."); accord Drumheller v. Shelburne Zoning Bd. of Adj., 155 Vt. 524, 529 (1990).

The 15-year statute of limitations in 24 V.S.A. § 4454(a) only applies to enforcement proceedings; we have no enforcement proceeding before us in this appeal. We therefore decline to provide any opinion on whether the City is barred from bringing an enforcement action regarding the three front-yard parking spaces. See Torres, 154 Vt. at 235. Further, even if we could address the enforcement issues here, we would not do so because they are irrelevant to the question of the legality of the parking spots.

As courts often state, a statute of limitations is merely "a procedural rule that requires the bringing of a complaint within a certain time." United States v. Musacchio, 968 F.2d 782, 790 (9th Cir. 1991). Numerous courts have held that activities that fall outside the statute of limitations can still be used as evidence in other hearings, see, e.g., id., and can also be used for other purposes, see, e.g., United States v. Behr, 93 F.3d 764, 765–66 (11th Cir. 1996) (citing cases from five other circuits for this same proposition). Thus, even if we were to assume that the City could not bring an enforcement action here, the DRB (or this Court standing in its stead) can—and should—continue to view the parking spaces as non-conforming when evaluating Applicant's request for conditional use approval. Simply put, just because an action cannot be condemned does not mean it must be condoned.

Applicant's other main argument for granting conditional use approval relies upon a footnote in the Ordinance that allows the DRB to approve the addition of one unit to certain multi-unit buildings. The following footnote appears in the "use, density, and dimensional requirements" section of the Ordinance: "One additional unit may be added to structures, which contained two or more units as of April 26, 1973, if approved in advance as a conditional use, by the development review board." Ordinance at 5-13 n.1. Although the parties place great weight

on whether the phrase "if approved in advance" modifies "[o]ne additional unit" or "structures," we need not reach that issue today. Even assuming that Applicant could receive retroactive approval for the addition of a unit that predated 1973, nothing in this footnote grants Applicant authority to ignore the other requirements of the Ordinance. Rather, Applicant must meet all "applicable provisions" of the Ordinance to receive conditional use approval under the current Ordinance. Ordinance § 1.1.7. Indeed, the City's Ordinance goes even further and notes that whenever there are conflicts between provisions of the Ordinance, "the more restrictive shall apply unless otherwise specified." Id. § 1.1.9.

We do not read the footnote at issue here as conflicting with the parking space requirements in a later section of the Ordinance (since both can—and should—be applied), but even if there were a conflict, Applicant could not escape complying with the more restrictive requirements regarding parking spaces. See id. As discussed in detail above, Applicant's four-unit building fails to meet the minimum parking space and setback requirements of Ordinance §§ 10.1.8 and 10.1.18—a result that cannot be changed under any interpretation of a footnote from another section of the Ordinance.

In summary, although we sympathize with Applicant's situation, we must remain mindful of our limited jurisdiction in this appeal. Here we are only called upon to determine whether Applicant meets the requirements for conditional use approval for her four-unit building—a question that we must answer in the negative. Even construing all material facts in the light most favorable to Applicant, we conclude that she cannot meet the parking space requirements of § 10.1.8 of the Ordinance with only three legal spaces when Table 10-3 requires at least seven. Indeed, even if we were to count the illegal spots, Applicant would only have six spaces. But we cannot count any of the front-yard parking spaces because they are in direct violation of a permit condition (dating to March 28, 1967) and because they fail to meet the minimum setback requirements of § 10.1.18. We also are compelled to reject Applicant's interpretation of 24 V.S.A. § 4454(a) as placing an affirmative duty upon a municipality to issue a zoning permit for non-conformities that have allegedly now existed so long as to prohibit enforcement. Finally, we cannot accept Applicant's argument that a footnote in the Ordinance allows Applicant to ignore other, more stringent provisions of the Ordinance. For these reasons, we must **GRANT** the City's request for summary judgment and **DENY** Applicant's request for conditional use approval to maintain a four-unit building.

8

## Conclusion

For all the reasons more fully discussed above, we **GRANT** summary judgment in favor of the City. As a result, Applicant's request for conditional use approval to maintain a four-unit building is hereby **DENIED**.

A Judgment Order accompanies this Decision. This concludes the proceedings before this Court in this appeal.

Done at Ripton, Vermont, this 4th day of June 2009.

_____

Thomas S. Durkin, Environmental Judge