**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 22 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-30071 |
| Plaintiff - Appellee, | D.C. No. 2:13-cr-00239-TSZ-1 |
| v. | |
| THOMAS R. HAZELRIGG, III, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, Senior District Judge, Presiding

Argued and Submitted June 9, 2016
Seattle, Washington

Before: EBEL,** PAEZ, and BYBEE, Circuit Judges.

Thomas Hazelrigg III appeals a judgment of conviction, entered after a jury

trial, on two counts of willfully attempting to evade or defeat taxes in violation of

26 U.S.C. § 7201. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

\*       This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

\*\*       The Honorable David M. Ebel, Senior Circuit Judge for the U.S.
Court of Appeals for the Tenth Circuit, sitting by designation.

**1.** Hazelrigg argues that the district court admitted evidence of his lavish living that was irrelevant, unduly prejudicial, and violative of due process. He also argues that the district court admitted evidence in violation of Federal Rule of Evidence 404(b). At trial, Hazelrigg objected only to photographs of the Bellevue condominium, and only on relevance grounds. We therefore review Hazelrigg's relevance challenge to the Bellevue condominium photographs for abuse of discretion. *See United States v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011). His remaining challenges are reviewed for plain error. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993). Under that standard, reversal is required only if the admission of evidence was plainly erroneous, affected Hazelrigg's substantial rights, and undermined the integrity of the proceedings. *See id.* at 732.

**2.** The district court did not abuse its discretion in admitting photographs of the Bellevue condominium. Evidence that Hazelrigg spent significant sums from nominee accounts on nominee properties, including the Bellevue condominium, was relevant to show his ability to pay his tax indebtedness and his affirmative attempts to defeat collection. *See Spies v. United States*, 317 U.S. 492, 499 (1943) (explaining that a wide range of conduct may give rise to an inference of willful attempt to defeat and evade taxes, including the "concealment of assets or covering up sources of income, handling of one's affairs to avoid making the

2

records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal"); *see also United States v. Carlson*, 235 F.3d 466, 468-49 (9th Cir. 2000).  Moreover, the Bellevue condominium was one of several nominee properties the government showed Hazelrigg controlled through straw owners.  The government properly used photographs of the residence to help the jury keep the properties straight and to tell a comprehensible story.  *See* Fed. R. Evid. 401 advisory committee's note (including "views of real estate" among examples of evidence regularly admitted to aid understanding).

**3.** The district court did not commit reversible plain error in admitting the other "lavish living" evidence, to which no objection was made.  *See Olano*, 507 U.S. at 732.

First, its admission was not a plainly erroneous application of the federal rules governing relevance.  As discussed above, evidence of Hazelrigg's spending from nominee accounts on nominee properties gave rise to an inference of willful evasion, *see Spies*, 317 U.S. at 499; *Carlson*, 235 F.3d at 468-69, and was therefore admissible because it tended to prove a fact of consequence, *see* Fed. R. Evid. 401, 402; *cf. United States v. Scholl*, 166 F.3d 964, 975 (9th Cir. 1999) (holding that prosecutor's questions about defendant's two houses, time share in Hawaii, and

golf club membership elicited testimony that "[a]lthough marginal," was nonetheless probative of the defendant's defense).

Second, it is not obvious that admission of the evidence was unduly prejudicial, because the government mostly tied evidence of Hazelrigg's spending to his use of the nominee accounts and properties. *See United States v. Unruh*, 855 F.2d 1363, 1377 (9th Cir. 1987) (admonishing that evidence of a defendant's wealth "should not be offered unless clearly connected" to the specific charges or conduct at issue); *see also United States v. Kessi*, 868 F.2d 1097, 1106-07 (9th Cir. 1989). Hazelrigg makes much of the potential prejudice arising from the government's use of photographs. But the photographs were not misleading, did not have "a visceral impact that far exceeds their probative value," were not likely to "arouse irrational fears and prejudices," and did not "ma[k]e the difference between acquittal and conviction." *United States v. Hitt*, 981 F.2d 422, 424-25 (9th Cir. 1992).

Third, the admission of relevant evidence was not plainly a violation of Hazelrigg's due process right to a fair trial. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 240 (1940) (recognizing that appeals to class prejudice may "so poison the minds of jurors . . . that an accused may be deprived of a fair trial"). As Hazelrigg concedes, the government made no references to Hazelrigg's lavish

4

living in closing argument, let alone the "undignified and intemperate" "appeals to class prejudice" present in *Socony-Vacuum Oil Co.*, 310 U.S. at 239. Indeed, it was *Hazelrigg*'s lawyer—not the government—who told the jury in closing, "The image of [Hazelrigg] sitting in a hot tub with a big glass of champagne laughing manically as he rolls [a] hundred dollars in his fingers, *that is probably pretty accurate*" (emphasis added).

Even if we assumed, however, that the district court plainly erred in admitting certain of the "lavish living" evidence, under our deferential standard of review, reversal would not be warranted. *See Olano*, 507 U.S. at 734. Hazelrigg has not demonstrated that his substantial rights were affected in light of the considerable evidence that he ordered his financial affairs to evade creditors, the Internal Revenue Service among them. *See Spies*, 317 U.S. at 499 ("If the tax-evasion motive plays any part in . . . [conduct which misleads or conceals,] the offense may be made out even though the conduct may also serve other purposes . . . .").

**4.** Finally, it was not a plainly erroneous application of Federal Rule of Evidence 404(b) for the district court to admit evidence demonstrating that Hazelrigg concealed his control of the Redmond residence during the IRS collection period but subsequently held himself out as the owner. Because this

5

evidence was intrinsic to the charged offense and "'necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime,'" it was "exempt from the requirements of Rule 404(b)." *United States v. Anderson*, 741 F.3d 938, 949-50 (9th Cir. 2013) (quoting *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012)).

**AFFIRMED.**